Joe R. BROWN et al.,
Plaintiffs-Appellees,

v.

Britt O. BRADDICK et al.,
Defendants-Appellants.

Joe R. BROWN et al.,
Plaintiffs-Appellees,

v.

Britt O. BRADDICK et al.,
Defendants-Appellants.

Nos. 79–1026, 79–1407.

United States Court of Appeals,
Fifth Circuit.

May 7, 1979.

Jack W. Hayden, David B. Dickinson, Houston, Tex., William Monroe Kerr, Midland, Tex., for defendants-appellants.

E. Richard Zamecki, Houston, Tex., for plaintiffs-appellees.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

GODBOLD, Circuit Judge:

We deal here with motions for stays of two district court discovery proceedings, both related to a single patent interference case pending in the Patent Office. Braddick and Lindsey together are the senior party in the patent interference proceeding before the U.S. Patent and Trademark Of-

fice Board of Interferences; Brown, with Cochran and Montgomery, is the junior party in this proceeding. Brown allegedly is attempting to use 35 U.S.C. § 24 to discover evidence in possession of the senior party, through the use of compulsory process of U.S. district courts and without complying with Patent Office procedural rules.[1] We deal with the two proceedings separately.

### No. 79–1026.

Junior party Brown, acting pursuant to Patent Office rule 287, 37 C.F.R. § 1.287, requested the Board of Interferences (BI) to order senior party Braddick to answer interrogatories and produce documents. BI denied this discovery request because it was made during presentation of the junior party's testimony in chief and Brown had made no showing that the requested discovery would be in the "interest of justice," as required by 37 C.F.R. § 1.287(c); see generally note 1 supra.

■ After losing before BI,[2] Brown, relying on 35 U.S.C. § 24,[3] obtained from the clerk of the district court for the Southern

1. An interference is a proceeding within the Patent Office to determine priority among rival claimants to patents covering the same or closely related subject matter. The contestant whose application for the disputed patent was filed first is designated the senior party to the proceeding, and is held to have priority unless priority is established by one of the other applicants, all of whom are designated junior parties. Each junior party is given a specified limited time period within which to make its case; the senior party is then given an opportunity to establish its position; and the junior parties are given an opportunity to rebut.

During this "trial" stage of the interference, evidence is taken by deposition or, if the parties agree, by affidavit. When the time limit for making its case has expired, each party submits the testimony and exhibits it has gathered to the Board of Patent Interferences. After all submissions have been made, the Board excludes evidence it regards as inadmissible, hears arguments, and makes a determination of priority. The losing party then has the choice of appealing the decision to the Court of Customs and Patent Appeals or of initiating a second proceeding in federal district court.

Although the Patent Act of 1952 authorizes the Commissioner of Patents to establish rules concerning discovery in patent interferences, the Patent Office has proved reluctant to permit junior parties to discover material relating to senior parties' cases-in-chief. Before 1971, no such discovery was permitted. In that year, the Commissioner promulgated rule 287, which permits each party, immediately before presentation of his opponent's case, to obtain from his adversary lists of witnesses, access to exhibits, and copies of documents upon which his adversary intends to rely. In addition, rule 287(c) authorizes the Board of Patent Interferences to order pretrial discovery as to matters under the control of a party, but only if "the interest of justice so requires." Thus, Patent Office regulations in general give the senior party an important procedural advantage: the junior parties must establish their cases-in-chief without knowledge of the senior party's case.

The Patent Act of 1952 also authorizes the federal district courts to issue compulsory process on behalf of parties marshalling evidence for submission to the Board. Section 24 of the Act [35 U.S.C. § 24] provides in part:

The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.

This provision is the source of the controversy.

Note, Discovery in Patent Interference Proceedings, 89 Harv.L.Rev. 573, 573–75 (1976) (footnotes omitted).

2. Brown implies that BI has tacitly approved the taking of Braddick's testimony and production of documents by extending the deadline for Brown's testimony in chief in order that Braddick's testimony might be taken. On examination of the BI order cited, it appears that BI extended the time for the junior party's testimony in chief only after being told of the district court order that Braddick be deposed. This order is dated 12/7/78, after the district court refused to quash the subpoena on 11/30/78, so it is clear that the district court did not rely on BI authorization for subpoena. The post-hoc reaction of BI to district court action cannot be relied upon by Brown as implicit approval of the court-ordered departure from standard Patent Office discovery procedure. See Sheehan v. Doyle, 529 F.2d 38, 39 n.* (CA1), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

3. § 24. Subpoenas, witnesses

The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, com-

District of Texas, where Braddick resides, a subpoena requiring Braddick to appear for deposition and to bring documents in his possession.[4] On November 30, 1978, the district court denied Braddick's motion to quash this subpoena. A hearing on a motion to reconsider was held December 1, but before the district court ruled on this motion Braddick filed notice of appeal on December 13. The next day the district court entered an order denying the motion for reconsideration and set the date of Braddick's deposition for December 18. Braddick failed to appear for this deposition. Afterwards, on December 21, he filed an "amended" notice of appeal from the district court's denial of reconsideration. On January 8, 1979, the district court found Braddick in contempt for failure to comply with its subpoena and set the date for hearing to determine "punishment" for January 11. On January 10 appellant Braddick requested a stay of further attempts to obtain discovery and of further contempt proceedings against him.[5] On January 10 this court stayed further district court proceedings "pending further consideration by the panel."

A threshold issue is whether the district court order requiring the deposition is final and appealable. *Gladrow v. Weisz*, 354 F.2d 464, 466 (CA5, 1965), holds such orders appealable because the discovery order is all that is before the district court and the case is completely ended as far as the district court is concerned when it grants or denies discovery. *Accord Sheehan v. Doyle*, 513 F.2d 895, 898 (CA1), *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975); *Frilette v. Kimberlin*, 508 F.2d 205, 209–10 (CA3, 1974), *cert. denied*, 421 U.S. 980, 95 S.Ct. 1983, 44 L.Ed.2d 472 (1975); *Hogan v. Natta*, 392 F.2d 686, 689 (CA10, 1968); *Ochsner v. Millis*, 382 F.2d 618 (CA6, 1967); *Natta v. Zletz*, 379 F.2d 615 (CA7, 1967). The Second Circuit, however, has held that district court decisions on patent discovery orders are not appealable (unless the district court denies discovery of a non-party). *See Shattuck v. Hoegl*, 523 F.2d 509 (CA2, 1975), *after further proceedings*, 555 F.2d 1118 (CA2, 1977). The Second Circuit reasoned that even though the case before the district court was completed, the discovery order nevertheless lacked finality because an aggrieved party could have the evidence excluded before BI or raise the issue when the completed case was appealed to a district court or the Court of Customs and Patent Appeals under 35 U.S.C. § 141.

The Fifth Circuit position appears sound to us. *Shattuck* seems to us not consistent with *Cobbledick v. U. S.*, 309 U.S. 323, 329–30, 60 S.Ct. 540, 543, 84 L.Ed. 783, 787–88 (1940), in which the Supreme Court said that a district court order directing a witness to testify before the ICC is final and appealable because "there remains nothing for it [the district court] to do." The Su-

---

manding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.

Every witness subpoenaed and in attendance shall be allowed the fees and traveling expenses allowed to witnesses attending the United States district courts.

A judge of a court whose clerk issued a subpoena may enforce obedience to the process or punish disobedience as in other like cases, on proof that a witness, served with such subpoena, neglected or refused to appear or to testify. No witness shall be deemed guilty of contempt for disobeying such subpoena unless his fees and traveling expenses in going to, and returning from, and one day's attendance at the place of examination, are paid or tendered him at the time of the service of the subpoena; nor for refusing to disclose any secret matter except upon appropriate order of the court which issued the subpoena.

4. The record before us does not contain the original subpoena issued in this case, but it appears that the single subpoena required Braddick to appear with documents and to testify.

5. Although appellant's attorney Hayden is named as a party to this appeal, none of the documents furnished to us show that the district court has ever held or threatened to hold Hayden in contempt. He thus does not appear to be a proper party to this appeal.

preme Court reasoned, "The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself." This reasoning is applicable here. Once the district court has granted or denied discovery, it is finished with the case. That further action in another forum is possible is irrelevant. The district court order granting Brown's discovery request should be treated as final and appealable. *See* Note, *Discovery in Patent Interference Proceedings*, 89 Harv.L.Rev. 573, 589–92 (1976).

■ A second threshold question is whether Braddick's notice of appeal deprived the district court of any further power to take action to enforce its order. Since Braddick failed to ask the district court for a stay pending appeal and to post supersedeas bond as required by F.R.C.P. 62(d), the district court retained power to enforce its order by civil contempt proceedings. *See Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (CA9, 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Blackwelder v. Crooks*, 151 F.Supp. 26 (D.D.C.1957), *rev'd on other grounds*, 102 U.S.App.D.C. 290, 252 F.2d 854 (1958). Although *U. S. v. Roundtree*, 420 F.2d 845, 853 (CA5, 1969), seems to say broadly that contempt may not be imposed as a sanction for violating a court order after an appeal has been filed unless the party's failure to obtain a stay pending appeal was wilful, on close reading it appears that there the court was discussing criminal contempt. *Roundtree* should not be extended to civil contempt because "[t]he crucial issue in civil contempt proceedings, as distinguished from criminal contempt, is not . . . state of mind but simply whether the Court's order was in fact violated." *NLRB v. Crown Laundry & Dry Cleaners, Inc.*, 437 F.2d 290, 293 (CA5, 1971).

■ There are four prerequisites to obtaining a stay pending appeal:

It is, of course, well settled that in order to obtain a stay pending appeal the applicants must demonstrate (1) a substantial likelihood that they will prevail on the merits; (2) that they will suffer irreparable harm if the stay is denied; (3) that issuance of a stay will not substantially harm other parties to the proceeding; and (4) that issuance of the stay will not interfere with the public interest.

*Taylor Diving & Salvage v. U. S. Dept. of Labor*, 537 F.2d 819, 821 n.8 (CA5, 1976). We do not foresee any interference with the public interest if the stay is denied, and Brown has pointed to none. If a stay is denied, Braddick will be irreparably harmed because he will be forced to choose between complying with the discovery order (and thus forfeiting the procedural advantages the senior party enjoys under Patent Office rules) and continuing his refusal to comply with exposure to possible sanctions for contempt. Although "harm" in some sense may be caused to Brown by issuance of a stay in that he will not be able under Patent Office rules to discover the senior party's evidence in time to present it during his own testimony-in-chief before BI, this "harm," even if legally cognizable, will not be substantial since he will have another opportunity to present evidence during rebuttal. Thus the critical issue is whether Braddick has shown substantial likelihood that he will prevail on the merits. We believe such a showing has been made. Since it appears clear that the district court's finding of contempt on the part of Braddick was a finding of civil, rather than criminal, contempt,[6] the district court contempt order will be invalid if the underlying subpoena was wrongly issued. *ITT*

**6.** Although the district court did not specify whether the contempt was civil or criminal, F.R.Crim.P. 42(b) requires notice of criminal contempt which "describe[s] it as such." Moreover, Braddick was not given trial by jury or the type of notice specified in Rule 42(b). This absence of compliance with 42(b) supports an inference that the contempt order was intended to be civil. *See Cliett v. Hammonds*,

305 F.2d 565, 570 (CA5, 1962). Since Brown requested the contempt order from the district court as "the only effective way to insure the obedience of the subpoena duces tecum," the inference is inescapable that the purpose of the contempt order was civil in nature, *i. e.*, to coerce compliance with the district court's order. *See Southern Ry. v. Lanham*, 403 F.2d 119, 124–25 (CA5, 1968).

*Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1357 (CA5, 1978).[7]

■ The prevailing interpretation of 35 U.S.C. § 24 has been that it authorizes district courts to grant discovery beyond that permitted by BI discovery rules and rules of admissibility.[8] *See, e. g., In re Natta*, 388 F.2d 215 (CA3, 1968); *Babcock & Wilcox Co. v. Combustion Eng'r, Inc.*, 430 F.2d 1177 (CA2, 1968), *aff'g mem.* 314 F.Supp. 235 (D.Conn.); *Natta v. Hogan*, 392 F.2d 686 (CA10, 1968); *Natta v. Zletz*, 379 F.2d 615 (CA7, 1967). Recently, however, the First and Third Circuits have rejected this interpretation of § 24 and have held that § 24 authorizes district courts to enforce subpoenas only for materials that are discoverable under Patent Office discovery rules. *See Frilette v. Kimberlin*, 508 F.2d 205 (CA3, 1974) (en banc), *cert. denied*, 421 U.S. 980, 95 S.Ct. 1983, 44 L.Ed.2d 472 (1975) (overruling *In re Natta, supra*); *Sheehan v. Doyle*, 513 F.2d 895 (CA1); *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975), *after further proceedings*, 529 F.2d 38 (CA1), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). There is no controlling Fifth Circuit precedent.[9] We find the *Frilette* reasoning persuasive.

In *Frilette*, the Third Circuit argued that if the Congress that enacted 35 U.S.C. § 24 had intended to change previous practice in favor of the unique system of allowing district courts to control pre-trial discovery before an administrative agency, it would have used more explicit language to obtain this result or at least there would be some indication in the legislative history that this was the congressional intent. 508 F.2d at 211–12. In reaching this conclusion the court stressed the disrupting effects of allowing district court interference in Patent Office proceedings. The reason given by courts that have allowed district courts to grant discovery where BI rules do not allow it is that the "clear language" of the statute (quoted in note 3 *supra*) allows no other result. *See, e. g., Natta v. Zletz*, 379 F.2d 615, 618 (CA7, 1967); *In re Natta*, 388 F.2d 215, 217 (CA3, 1968). But, as the *Frilette* court suggests, the language is not so clear as to compel the conclusion that Congress meant to allow discovery in district courts independent of BI control. *See* 508 F.2d at 211; *accord Sheehan II*, 529 F.2d at 40; *see generally* Note, *Discovery in Patent Interference Proceedings*, 89 Harv.L.Rev. 573, 573–89 (1976). Because BI discovery rules do not appear to permit discovery of this material at this time, as shown by BI's disapproval of Brown's discovery request, if

**7.** Braddick asserts that he was never given personal notice of the contempt hearing and that notice was served only on his attorney (who was out of town). The district court's finding of contempt likely could not stand in any event if Braddick's assertion that he never received personal notice of the contempt hearing is true. Criminal contempt cannot be imposed unless the party is given notice pursuant to F.R.Crim.P. 42(b), which is sufficient to inform the party of the particulars of the contempt charge, *U. S. v. Robinson*, 449 F.2d 925, 930 (CA9, 1971), and which gives a reasonable time to prepare a defense. Every circuit that has considered the question has held that the notice requirements of F.R.Crim.P. 42(b) apply to civil contempt proceedings, *see In re Grand Jury Investigation*, 545 F.2d 385, 388 (CA3, 1976); *In re Grand Jury Investigation*, 542 F.2d 166, 168–69 (CA3, 1976), *cert. denied*, 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977); *In re Bianchi*, 542 F.2d 98, 101 (CA1, 1976) (dictum); *In re Grand Jury*, 524 F.2d 209, 218–19 (CA10, 1975); *In re Sadin*, 509 F.2d 1252 (CA2, 1975); *U. S. v. Alter*, 482 F.2d 1016, 1020–24 (CA9,

1973); *cf. Consolidation Coal Co. v. Local No. 1784*, 514 F.2d 763 (CA6, 1975) (civil contempt requires notice), and this court in one case apparently assumed that notice is required for civil contempt proceedings. *See In re Grand Jury Proceedings*, 559 F.2d 234, 237 (CA5, 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1234, 55 L.Ed.2d 762 (1978). We have found no case allowing constructive notice. Thus any contempt already found by the district court cannot stand. This conclusion, however, does not suffice to decide the stay motion before us since the district court could give notice in the future and hold a hearing on a new contempt motion.

**8.** These rules are more restrictive of discovery than the Federal Rules of Civil Procedure.

**9.** *Gladrow v. Weisz*, 354 F.2d 464 (CA5, 1965), addresses a different question—whether a district court's misdescription of a subpoena duces tecum issued under 35 U.S.C. § 24 as a Rule 34 discovery order is reason for vacating the order.

*Frilette* and *Sheehan* are followed, Braddick will prevail on the merits.

In sum, Braddick has met all requirements for issuance of a stay pending appeal. Therefore, the temporary stay granted at his request will be continued in effect. Because Braddick's attorney Hayden has not shown that he is in danger of being held in contempt, no stay of district court proceedings against him is necessary.

### No. 79–1407.

The facts are skimpy. Brown has filed in the Western District of Texas subpoenas for Lindsey, a member of the senior party, and for Wayne Grainger, a nonparty. The district court refused to quash either subpoena but neither of the two persons named appeared for deposition at the specified time. The district court then set a second date, February 2, 1979, for compliance with its subpoena. Braddick and Lindsey, the senior party, sent a telegram to this court requesting that further district court proceedings in the Western District of Texas be stayed pending appeal. We ordered district court proceedings "stayed pending action by a panel of this court on appellant's motion for stay pending appeal."

■ The moving party has not carried its burden. First, one of the persons subpoenaed, Grainger, is not a party to the interference proceeding and has not joined in the request for a stay. Braddick and Lindsey do not have standing to raise the issue of Grainger's amenability to the compulsory process of the district court since they are not in possession of the materials subpoenaed and have not alleged any personal right or privilege with respect to the materials subpoenaed. *See Vogue Instrument Corp. v. LEM Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y.1967); *Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo.1957); 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2457 at 431 (1971).

■ Second, reading Lindsey's brief generously, he appears to be arguing that because Brown did not "clearly enunciate" the testimony he wanted from Lindsey, dis-covery would not be permitted under Patent Office discovery rules, 37 C.F.R. § 1.287, and that therefore under the *Frilette-Sheehan* construction of 35 U.S.C. § 24 the district court should not have allowed discovery. 37 C.F.R. § 1.287 does not on its face contain a "clear enunciation" requirement. Even if there is such a requirement, Lindsey does not attach the subpoena and, as a result, we cannot tell whether the subpoena is adequate. Lindsey fails in his burden of showing a substantial probability of success on the merits.

■ If his brief is read very generously, Lindsey may also be arguing that district court-compelled discovery under 35 U.S.C. § 24 is improper unless the Patent Office has affirmatively authorized such discovery. This argument also is insufficient to show a substantial probability of success on the merits. Although the First Circuit appears to require affirmative authorization before a district court subpoena may be issued under 35 U.S.C. § 24, *see Sheehan v. Doyle*, 513 F.2d 895 (CA1), *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975), *after further proceedings*, 529 F.2d 38 (CA1), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); Note, *Discovery in Patent Interference Proceedings*, 89 Harv.L.Rev. 573, 577 (1976), the Third Circuit in *Frilette v. Kimberlin*, 508 F.2d 205 (CA3, 1974) (en banc), *cert. denied*, 421 U.S. 980, 95 S.Ct. 1983, 44 L.Ed.2d 472 (1975), did not impose such a requirement and instead held only that § 24 may not be used to obtain materials not discoverable under BI discovery rules. There was no requirement of affirmative BI authorization before the 1952 enactment of § 24, *see generally In re Natta*, 388 F.2d 215, 221–23 (CA3, 1967) (Seitz, J., dissenting), and neither the language nor the legislative history of § 24 reveals any congressional intent to make discovery in the district courts more difficult than it previously had been. Moreover, none of the BI discovery rules contain any requirement that parties apply to it for discovery before going into district court. Thus we are not persuaded that an affirmative BI approval requirement should be imposed.

It is, therefore, ORDERED by the court as follows: the stay pending appeal of further proceedings to enforce the discovery orders of the district court in No. 79–1026 shall continue in effect with respect to appellant Braddick and is VACATED with respect to Hayden. The temporary stay granted in No. 79–1407 is VACATED.