**ISLAND CREEK COAL SALES COMPANY, Plaintiff-Appellee, Cross-Appellant,**

v.

**The CITY OF GAINESVILLE, FLORIDA, Defendant-Appellant, Cross-Appellee.**

Nos. 84–5108, 84–5144.

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1985.

Decided June 10, 1985.

Merritt, Circuit Judge, dissented and filed opinion.

Bert T. Combs, M. Stephen Pitt, Wyatt, Tarrant & Combs, Louisville, Ky., Merrill S. Schell, Jo Ann Dale, argued, Louisville, Ky., for defendant-appellant, cross-appellee.

Charles Calk, R. Allen Webb, Gess, Mattingly, Saunier & Atchison, Lexington, Ky., Janet Kane, argued, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff-appellee, cross-appellant.

Before MERRITT and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Two issues are involved in this continuing dispute between the parties who entered into a substantial long-term coal supply agreement. The first issue involves the power of a district court to enforce or clarify its judgment during the pendency of an appeal. The second issue involves the meaning and enforceability of an arbitration award under the Arbitration Act, 9 U.S.C. §§ 1–11.

On July 26, 1978, Island Creek Coal Sales Company ("Island Creek") and the City of Gainesville ("Gainesville") entered into a long-term coal sales agreement, with the coal to be extracted from a mine known as "Holden 22" in Kentucky. The price of coal subsequently declined, and in January 1983 Gainesville sought to terminate the sales agreement. Gainesville, pursuant to the terms of the sales agreement, instituted an arbitration proceeding in Louisville, Kentucky. As a basis for terminating the agreement, Gainesville asserted that Island Creek had breached the contract by transferring operation of Holden 22 to another entity. Island Creek denied that it had transferred operation of the mine.

On May 10–11, 1983, a full evidentiary hearing was held before a three-member arbitration panel. Following the hearing, the panel informed the parties that it tentatively favored Island Creek's position. On May 16, prior to the issuance of any order by the panel, Gainesville announced its intention to terminate the agreement notwithstanding the pendency of the arbitrators' decision. On May 23 a telephone conference was held in which counsel for the

parties and the arbitrators participated. Following the conference, the panel issued an interim order directing Gainesville to "continue performance of the contract ... by accepting shipments of coal from the Holden 22 mine...."

On May 31, 1983, Gainesville instituted an action in the Northern District of Florida, charging Island Creek with various acts of fraud and violations of federal and state racketeering laws, as well as seeking to avoid the decision of the arbitration panel.[1] That same day Island Creek commenced the present action in federal court in the Western District of Kentucky, seeking confirmation of the arbitrators' award. The court immediately stayed any proceedings in Florida that might involve the arbitration award, and on July 22, 1983, entered judgment confirming the arbitrators' interim award.[2]

Immediately following the entry of judgment, Gainesville filed its notice of appeal. While the appeal was pending, on September 9, 1983, Island Creek moved the district court to issue a contempt order against Gainesville because of Gainesville's persistent refusal to comply with the court's July 22 judgment. On October 21, 1983, the court, though refusing to hold Gainesville in contempt, issued an opinion in which it found that Gainesville was not in compliance with its judgment. Gainesville had not accepted nine shipments of coal tendered to it and delivered in Florida from Island Creek's mines between May 23 and July 22, the time between the arbitrators' interim order and its confirmation by the district court. The district court ordered Gainesville to enter into "a mutually agreeable time table" with Island Creek for the purpose of correcting its noncompliance, and also ordered Gainesville to "maintain the 'status quo'" by "accept[ing] 10,000 tons of coal every eight days." Judge Allen noted that he was not altering or modifying the July 22 award; rather, he was simply clarifying the award to force Gainesville to do what was required of it under the arbitrators' prior decision.

Gainesville, on October 31, 1983, moved to vacate the district court's October 21 order. On December 1, 1983, the district court denied this motion and ordered Gainesville's compliance under pain of contempt. On December 12, 1983, Gainesville moved to amend the December 1 order. Following a hearing, the court on January 24, 1984, stayed its December 1, 1983 order pending the outcome of the appeal. The stay was conditioned, however, on Gainesville's posting a $1,469,000 bond "to secure its performance" of the December 1 judgment. The January 24 order required that Gainesville commence performance of its obligations within thirty days of receipt of the mandate. Forfeiture of the bond was predicated on Gainesville's failure to perform any of its obligations contained in the December 1, 1983 order.

Gainesville filed this timely appeal challenging the authority of the district court to enter these October, December and January orders. Island Creek cross-appeals, seeking to have the January 24 forfeiture order clarified to require forfeiture of the bond should Gainesville fail to accept and pay for the nine shipments tendered to it over 20 months ago.

It was on March 15, 1984, following Gainesville's second notice of appeal, that this court affirmed the July 22 order of the district court. We held that the district court properly confirmed the arbitrators' interim order, and rejected all of Gainesville's arguments to the contrary.

■ Generally, notice of appeal deprives the district court of jurisdiction of all matters forming the basis of the appeal. This rule, however, is neither a creature of statute nor is it absolute in character. *Jago v. United States District Court,* 570 F.2d 618 (6th Cir.1978).

[W]here the district court .... has a continuing duty to maintain a status quo,

---

1. Island Creek has since been granted summary judgment in that action. No. GCA–83–0052–MMP.

2. This judgment was affirmed by this court. *See* 729 F.2d 1046 (6th Cir:1984).

and where, as the days pass, new facts are created by the parties and the maintenance of the status quo requires new action, ... an appeal from the supervisory order does not divest the court of jurisdiction. . . .

*Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir.1976). Where, as here, the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes. *Farmhand, Inc. v. Anel Engineering Industries, Inc.,* 693 F.2d 1140, 1146 (5th Cir.1982); *Brown v. Braddick,* 595 F.2d 961, 965 (5th Cir.1979).

In the present case, the arbitration award ordered Gainesville to "continue performance of the contract ... by accepting shipments of coal from the Holden 22 mine. . . ." In its July 22 order the district court confirmed this award.[3]

■ Thereafter, Gainesville began accepting coal shipments from Island Creek. However, Gainesville refused to accept the nine May-July shipments, and also refused to pay anything for the first six shipments it did accept following the confirmation. Because of this, Island Creek sought to have Gainesville held in contempt. We conclude that the district court did not err in exercising jurisdiction over this matter despite the notice of appeal. The July 22 order was not stayed pending appeal, nor was a bond filed. The order was thus open to supervision and enforcement by the district court. *Braddick,* 595 F.2d 961.

■ Gainesville next argues that because the arbitrators' interim order only required that it accept future shipments, the district court lacked authority to order that it do anything more. Gainesville claims that by ordering it to accept the nine shipments at issue, and by requiring it to accept and pay for all shipments on a scheduled basis, and to pay for coal already

received, the district court overstepped its limited authority under the Arbitration Act.

Indeed, it is true that, as a general principle, a court does not have the power or authority to correct or modify either an incomplete or ambiguous arbitration award. Instead, the case should be resubmitted to arbitration for clarification. *See Annot.,* 36 A.L.R.3d 939, 945 (1971). The Arbitration Act grants the federal courts the authority to correct or modify an award only in limited circumstances. 9 U.S.C. § 11. That statute provides in relevant part that

> a district court may make an order modifying or correcting the award upon the application of any party to the arbitration—
>
> *     *     *     *     *     *
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

■ In this case the arbitrators' order required Gainesville to "continue performance of the contract ... by accepting shipments of coal. . . ." The intent of that order seems clear. Gainesville is bound by the sales contract and must perform its understandings thereunder. We hold that the district court possessed authority under 9 U.S.C. § 11 to enforce the clear meaning and intent of that order. The district court's order that Gainesville accept the missed shipments, receive future shipments on a scheduled basis, and pay for all the coal it received is an effort merely to require that Gainesville perform as the arbitrators have ordered it to "continue performance."

Moreover, it is not clear that the district court either corrected or modified the interim order in any respect. The court only required Gainesville to do specifically that

---

3. We stated:
   Chief Judge Allen concluded that "[t]he interim award disposes of one self-contained issue, namely, whether the City is required to per-

form the contract during the pendency of the arbitration proceedings."
729 F.2d at 1049.

which was inherently required of it by the arbitrators under the contract.[4] Specific performance of the sales agreement required that Gainesville purchase a specific amount of coal, which was required by the contract to be delivered "in unit trains of not less than five thousand (5,000) tons nor more than ten thousand (10,000) tons capacity...." Further, the agreement provided that "[u]nit trains shall be scheduled for shipment at reasonably equal intervals ... throughout the year...." The district court found that Gainesville had previously accepted and paid for 10,000 tons of coal every eight days, and accordingly ordered it to continue doing so. Gainesville does not contend that this finding is erroneous. Because the arbitrators ordered Gainesville to "continue performance," it is clear that this meant it should do as it had done in the past in respect to carrying out its obligations. The district court's order in dispute only serves to confirm and enforce the *arbitrators'* award in the face of obdurate opposition by Gainesville.

■ The district court properly refused to set a specific price that Gainesville must pay for the coal it received, because that is a matter that Gainesville has submitted to another arbitration. Instead, the court ordered that Gainesville is obliged to pay the contract price established by a formula contained in the sales agreement. To ensure that all the coal accepted was paid for, the court in its final order required Gainesville to post a bond. Because the contract is silent about requiring a bond, we must consider whether the court acted within its proper authority in this regard. We are not unsympathetic with Judge Allen's actions, because it would be anomalous to conclude that the arbitrators ordered only acceptance of coal and not payment therefor.

Since, however, it is conceded that the matter of price for coal under the contract is now before arbitration, and since Gainesville is presumably capable of meeting its

financial obligation once determined by the arbitrators, we will set aside that portion of the district court's order requiring that Gainesville post a bond to satisfy its obligation; provided Gainesville pays promptly to Island Creek an amount equal to the minimum price it contends in good faith to be due for the coal it has already received but not paid for under the previous order of the arbitrators as confirmed by this court. The contract, of course, sets out the annual maximum amount of coal which Gainesville is required to accept.

We believe our decision is not only logical and reasonable, but it is also consistent with the policy and purpose of the Arbitration Act. "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980). The position advanced by Gainesville would require federal courts to remand for clarification or correction every arbitration award disputed by one of the parties in the event it is brought to federal court for confirmation and enforcement. This would make for an expensive and tedious process, directly opposite to the purpose of arbitration. Further, for an unsuccessful party to force a successful adversary to resort to the federal courts for confirmation and/or interpretation of an extended contract arbitration award, in the event of objections to every detail thereof, would render a reasonable arbitration award ineffectual.

We accordingly AFFIRM the judgment of the district court in all respects, save the bond requirement. The orders of Judge Allen, with that exception, were made within his proper jurisdiction and authority, even if the court's action could be characterized as a modification or correction of the arbitrators' interim order. *See* 9 U.S.C. § 11(c). In light of Gainesville's position throughout the course of this dispute, we

---

4. We recognized that the prior arbitration interim award was appropriate, provided "equitable relief," and required "specific performance ...

pending completion of the arbitration." 729 F.2d at 1048, 1049.

find the district court's orders were necessary "to effect the intent [of the arbitrators' decision] and promote justice between the parties." 9 U.S.C. § 11(c). To act otherwise, in light of this record, would be to preclude the district court from taking action necessary to ensure specific performance of the sales agreement, which had been directed by arbitration, confirmed by the district court, and affirmed by this court in a prior order.

The setting aside of the bond requirement, however, is specifically conditioned upon Gainesville's making payment within thirty days from entry of this opinion to Island Creek of the minimum amount that it contends in good faith is due under its interpretation of the contract for coal already received. (This would serve as a credit or offset to Gainesville depending upon the arbitration award as to price).

Accordingly, we AFFIRM the orders of the district court with the exception and condition herein noted.

MERRITT, Circuit Judge, dissenting.

It seems to me that the District Court, in ordering Gainesville to take a coal shipment every 8 days, invades the province of the arbitrators. The parties contracted for arbitration of the issues. How the missed shipment situation should be corrected should address itself in the first instance to the arbitrators. The effect of what the District Judge did was to order compensation for past wrongs, an issue clearly subject to arbitration. What has happened here is that Island Creek, once it got its order confirming the arbitrators on another issue, wanted to use its position to improve its situation by getting the District Court to issue a so-called "clarifying injunction" on a different question not yet submitted to the arbitrators.

This view is reinforced when we consider the problem of assessing the value of the coal and the amount that Gainesville should be required to pay for these shipments. This pricing question is obviously one for the arbitrators, and by deciding the shipment question before it is arbitrated the Court got itself into the situation of having to decide this valuation question on a contempt petition.

The overriding principle here is to recognize the separate roles of the federal judiciary and arbitrators in cases where the parties have contracted for arbitration. The Court's decision mixes up these roles rather than keeping them separate.