837 F.2d 477
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA,
Plaintiff-Appellee,
v.
The G & C FOUNDRY COMPANY, Defendant-Appellant.
 No. 87-3232.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and HULL, District Judge.*
 PER CURIAM.
 
 
 1
 At issue in this appeal is the district court's enforcement of an arbitration award that required The G & C Foundry Company to reinstate one of its employees. The district court found that the employee's presentation of a back-to-work slip from her physician satisfied the company's standard practice, and the court ordered her reinstatement with back pay. In light of the series of events preceding the employee's request for reinstatement, we must disagree with the district court.
 
 
 2
 From 1979 until May 29, 1985, Cindy Brundage was employed as a core fitter at a foundry operated by appellant, The G & C Foundry Company, and was president of appellee, Local No. 714 of the United Electrical Workers. The core fitter's job required frequent heavy lifting and carrying. In early 1984 Brundage developed lower back problems and underwent surgery for a herniated disc. In mid-April 1984, she received a back-to-work slip from Dr. Dakters, a neurosurgeon, which authorized her to return to work but limited the amount she could lift. G & C claimed, and an arbitrator subsequently found, that the foundry had no light duty jobs available to offer Brundage. During this period of time, Dr. Dakters wrote a letter "To Whom It May Concern," stating that the physical demands of Brundage's job were the underlying cause of her advanced disc degeneration and disc rupture.
 
 
 3
 Dr. Dakters examined Brundage again in mid-May 1984, and at that visit Brundage assured the physician that on her return to work she would be assigned a job that required no lifting. As a result of this examination, on July 5, 1984, Dr. Dakters wrote Brundage a back-to-work slip with no restrictions. Appellant accepted the back-to-work slip, and Brundage returned to work at her former position in July 1984. Dr. Dakters had no basis to know that Brundage would be returning to her customary heavy work duties.
 
 
 4
 In April 1985, Brundage again developed lower back pain. Her family physician, Dr. Evans, was unable to determine whether the pain was attributable to her back condition or due to the fact that Brundage was approaching the end of her first trimester of pregnancy. Shortly thereafter, Brundage took a one month medical leave of absence based on her physician's statement that she was suffering from "acute lumbar myofascitis." Brundage did not return to work immediately at the end of one month, but informed her foreman that she would be out at least another week. When Brundage failed to report to work for four days following the expiration of her medical leave, G & C discharged her for violation of the company's rules regarding the reporting of absences.
 
 
 5
 Appellee Union grieved the discharge, but did not accomplish Brundage's reinstatement, even though Brundage provided a statement from Dr. Evans that she was able to return to work as of June 3, 1985. The Union demanded arbitration, and on March 19, 1986, the arbitrator ordered Brundage's reinstatement with back pay. The reinstatement, however, was made subject "to [Brundage's] providing medical evidence of her fitness to return to work in accordance with the Company's standard practice."
 
 
 6
 In November 1985, during the period between her discharge and the arbitrator's award, Brundage delivered her child. At approximately the same time she initiated a workman's compensation claim based on severe lower back pain arising from her employment. This claim, of course, was based on a contention that she was then incapable of returning to her usual job.
 
 
 7
 On April 1, 1986, G & C sent Dr. Dakters a letter containing questions regarding Brundage's medical fitness to return to work as a core fitter. The physician's office informed G & C that Brundage's authorization was a prerequisite to the release of any medical information. G & C wrote to Brundage seeking such an authorization, but received no response. Dr. Dakters examined Brundage on April 11, 1986, and on the basis of that examination issued a back-to-work slip stating that Brundage was able to work. In his deposition, however, Dr. Dakters said that on that visit Brundage told him she would be able to return to a job with limited lifting. He also testified that he did not know that she was going back to work as a core fitter.
 
 
 8
 G & C refused to reinstate Brundage when presented with the April 11 back-to-work slip and instead insisted on additional evidence of her medical fitness. The Union brought suit in district court seeking enforcement of the arbitrator's award. After conducting a bench trial, the district court affirmed the arbitrator's award and found Brundage was entitled to reinstatement as of April 11, 1986.
 
 
 9
 The district court based its decision on its finding that Brundage, by presenting G & C with medical authorization in the form of a back-to-work slip, had provided the company with evidence of her fitness to return to work in accordance with the company's standard practice. The court relied both on the testimony of G & C's officers regarding the company's practice of accepting medical releases and on Brundage's own return to work in 1984 following the submission of a medical release similar to that presented in April 1986. We believe, however, that the district court should not have found the company bound by its normal prior practice in light of the particular circumstances of the instant case.
 
 
 10
 As an initial matter, we recognize that while the federal courts have jurisdiction to enforce arbitration awards, see Cleveland Paper Handlers v. E.. Scripps Co., 681 F.2d 457, 459-60 (6th Cir.1982), we properly should ordinarily decline to review the merits of an arbitration award under a collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596 (1960).[1] Furthermore, we should not "go beyond the arbitration award to decide questions that the arbitrator did not decide." Cleveland Paper Handlers, 681 F.2d at 460. In order to enforce an award, on the other hand, we may need under some circumstances to construe that award and determine its evident intention. See Island Creek Coal Sales Co. v. City of Gainesville, 764 F.2d 437 (6th Cir.), cert. denied, 474 U.S. 948 (1985); San Francisco Electrical Contractors Ass'n v. Electrical Workers, 577 F.2d 529 (9th Cir.), cert. denied, 439 U.S. 966 (1978).
 
 
 11
 The intent of the provision in the arbitrator's award allowing G & C to require medical evidence of Brundage's fitness to return to work is clear: The arbitrator did not wish to require the company to rehire a person who is unfit to perform her job and who is likely to produce a workman's compensation claim. Although the award uses the phrase, "in accordance with the Company's standard practice," we cannot read this language under the undisputed facts to foreclose G & C's demands for further assurances prior to reinstatement in this case. Brundage's apparent misrepresentation to Dr. Dakters regarding the requirements of her work takes this case out of the normal run of cases in which G & C allows returns to work based on simple back-to-work slips. Here there are entirely different circumstances from the usual case where the employee truthfully describes her work requirements to the examining physician. It has been held that arbitration awards procured by fraud or misrepresentation should not be enforced. See Morelite Constr. Corp. v. New York City Dist. Council Carpenters, 748 F.2d 79, 84 (2d Cir.1984); Office & Professional Employees v. Washington Metro. Area Transit Auth., 724 F.2d 133, 140 (D.C.Cir.1983). We cannot close our eyes to Brundage's actions in seeking a physician's certificate based on false representations to attain her reinstatement.
 
 
 12
 Thus, we conclude that before reinstating Brundage pursuant to the arbitrator's award, G & C may demand a certification by a physician with realistic knowledge of Brundage's normal duties as a core fitter that Brundage is medically fit to return to her job. In so holding, we are not setting aside or modifying the arbitrator's award. Rather, we construe the award in light of the actual circumstances, which are essentially undisputed, and enforce it accordingly. We reach this result sensitive to the fact that Brundage occupied a position as union president, and G & C may not subject her to a more stringent standard than other employees.
 
 
 13
 Because we find that Brundage has not satisfied the arbitral award's condition precedent to her reinstatement, the judgment of the district court is REVERSED. We enforce, instead, the arbitrator's requirement that Brundage be offered reinstatement to her former position upon demonstrating that she is physically capable of returning to this work. We AFFIRM the arbitrator's award that Brundage is entitled to "all applicable benefits and accumulation of seniority from May 29, 1985" rather than back pay.
 
 
 
 *
 THE HONORABLE THOMAS G. HULL, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 "... the arbitrator's decision must draw its essence from the agreement he 'is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.' " Steelworkers, supra, at 597, as quoted in Paperworkers v. Misco, Inc., --U.S. ----, No. 86-651, slip op. at 11 (Dec. 1, 1987) (emphasis added in Misco)