**NCR CORPORATION, Petitioner,**

v.

**CBS LIQUOR CONTROL, INC.,**
dba Acme Cash Register
Co., Respondent.

**SAC–CO, INC., dba Acme Cash Register
Co., Applicant/Movant,**

v.

**NCR CORPORATION, Respondent.**

Nos. C–3–91–027, C–3–91–031.

United States District Court,
S.D. Ohio,
Western Division at Dayton.

Nov. 16, 1993.

Todd B. Carver, NCR Corp., Dayton, OH, Donald J. Friedman, Perkins Coie, Washington, DC, for NCR Corp.

Stephen Charles Findley, Freund, Freeze and Arnold, Dayton, OH, Albert J. Millus, James M. Hayes, Hinman, Howard & Kattell, Binghamton, NY, for Sac–Co. Inc., CBS Liquor Control, Inc.

## DECISION AND ORDER CONFIRMING IN PART AND VACATING IN PART ARBITRATION AWARDS

MERZ, United States Magistrate Judge.

These actions were brought respectively by NCR Corporation and Sac–Co., Inc., doing business as Acme Cash Register Co. ("Acme"),[1] to vacate or confirm arbitration awards between them.

NCR is a Maryland corporation with its principal place of business in Dayton, Ohio; Acme is a New York corporation. This Court thus has subject matter jurisdiction of these controversies by virtue of the parties' diverse citizenship. 28 U.S.C. § 1332. NCR initially brought an action to vacate in federal court in New York, but that action has been dismissed and the parties agree venue is proper in this Court. The cases have been consolidated without objection (Doc. # 7). The parties have unanimously consented to magistrate judge trial authority under 28 U.S.C. § 636(c) and the case has been referred on that basis (Doc. # 14). The issues have been thoroughly briefed by the parties, which briefs have been supplemented by oral argument (transcribed at Doc. # 27) and subsequent correspondence with the Court, and are now ripe for decision.

### PROCEEDINGS IN ARBITRATION

The following facts are established by the record:

1. Sac–Co., Inc., is the present corporate name of the entity previously known as CBS Liquor Control, Inc.

NCR manufactures and distributes business machines, including cash registers. In 1982 Acme entered into an agreement (Ex. A to Doc. # 2) to be a non-servicing dealer for NCR's cash registers. At the time, NCR's own service people did not sell NCR cash registers, but in 1984 they were authorized to do so in competition with non-servicing dealers, but not in competition with NCR's own sales personnel. In 1988 NCR amended the terms on which it did business with non-servicing dealers and Acme did not continue to be such a dealer. NCR considered Acme in default on a note from some financing in 1987 and sued Acme in New York state court on the note in April, 1989 (See Complaint, Ex. B to Doc. # 2). Acme filed counterclaims alleging, *inter alia*, unfair competition (Ex. C. to Doc. # 2) and seeking compensatory and punitive damages. NCR moved the New York Supreme Court to stay the litigation pending referral of all the matters to arbitration and asked the court to enforce the arbitration clause of the 1982 Agreement. On November 24, 1989, the court granted that relief (Exs. D & E to Doc. # 2).

NCR then demanded arbitration under the Commercial Arbitration Rules of the American Arbitration Association (Demand, Ex. F to Doc. # 2). The AAA ordered the proceeding held in New York and Robert Ganz, an attorney from Albany, was duly designated as the single arbitrator. The parties filed pre-hearing memoranda briefing the issues they believed involved (Exs. H & I to Doc. # 2).

NCR attempted to defeat Acme's counterclaims on the basis of the statute of limitations and Arbitrator Ganz ordered additional briefs on the statute of limitations questions (Exs. K & L to Doc. # 2). The parties filed those briefs (Exs. M & N to Doc. # 2) and Arbitrator Ganz rendered a Decision on September 19, 1990 (Ex. O to Doc. # 2). He noted that the 1982 Agreement contained no choice of law clause which could have made New York law expressly applicable. He also noted that the 1982 Agreement had no contractual time bar on demands for arbitration, although such clauses are common and enforceable. He concluded that a "door-closing" mechanism such as a statute of limitations should not be employed in this arbitration. NCR requested reconsideration which Acme opposed and the Arbitrator denied (Exs. P, Q, & R to Doc. # 2).

After a very extensive hearing consuming a number of trial days, Arbitrator Ganz rendered a Decision and three Awards on November 8, 1990 (Exs. AA, BB, CC, and DD to Doc. # 2). The first award grants NCR $10,710.95 on its claims against Acme. The second award grants Acme $58,896.00 in compensatory damages on its counterclaims. The third award is for $1,335,180.00 in punitive damages against NCR but in favor, equally, of all those persons or entities "who were non-servicing NCR dealers as of May 25, 1984." These proceedings followed.

## POSITIONS OF THE PARTIES

Both parties agree the award of punitive damages to non-parties to the arbitration must be vacated.

In addition, NCR contends that the punitive damages award must be vacated altogether because arbitrators have no authority to award punitive damages, because the facts found by Arbitrator Ganz do not support an award of punitive damages under New York law, because the Arbitrator's theory of punitive damages was based on his theory of compensatory damages on which NCR was not given an opportunity to present evidence, and because the award is asserted to violate the Due Process Clauses of the Fifth and Fourteenth Amendments.

NCR contends the compensatory damage award must also be vacated because it is based on a theory adopted by the arbitrator without permitting NCR to put on evidence and because the arbitrator assertedly acted in manifest disregard of the law when he refused to apply the New York (or any) statute of limitations to Acme's counterclaims. If these two awards are vacated, NCR is willing to give up the $10,000 award in its favor.

Acme reminds the Court that its role in reviewing an arbitrator's award is quite limited. It contends that the compensatory damages award should be confirmed because it falls within the range of damages even

NCR's expert witness discussed. As to the punitive damages award, Acme asserts the power of arbitrators acting under the Federal Arbitration Act to grant punitive damages is widely accepted and should be recognized by this Court. While agreeing that punitive damages cannot be awarded to non-parties, it asserts that portion of the award is readily severable and doing so will carry out the arbitrator's intention of punishing NCR.

## OPINION

Broadly speaking, arbitration is a contractual proceeding, whereby the parties to any controversy or dispute, in order to obtain an inexpensive and speedy final disposition of the matter involved, select judges of their own choice and by consent submit their controversy to such judges for determination, in place of the tribunals provided by the ordinary processes of law.

*Gates v. Arizona Brewing Co.*, 54 Ariz. 266, 269, 95 P.2d 49, 50 (1939), quoted at Wilner, DOMKE ON COMMERCIAL ARBITRATION (rev. ed.), § 1.01 (hereinafter "Domke"). Because arbitration is a matter of contract in the first instance, the Court's analysis must begin with the parties' contract. The 1982 Agreement provides at ¶ 15:

> Should any dispute occur between the parties arising out of or related to this Agreement, or their rights and responsibilities to each other, the matter shall be settled and determined under the then current rules of the American Arbitration Association providing that the arbitrator selected shall be knowledgeable in the field of business information and data processing systems. The decision of the Arbitrator shall be held, and the award shall be deemed to be made, in Dayton, Ohio unless otherwise agreed.

(Ex.A. to Doc. # 2, p. 7). Very significantly, the 1982 Agreement has no choice of law clause and no contractual limitation on the time within which a claim may be made under the contract.

■ Both parties brought their actions in this Court under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"). The purpose of the FAA was "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate." *Volt Info Sciences v. Stanford University*, 489 U.S. 468, 473, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985). In essence, the FAA places agreements to arbitrate on the same footing as other contracts in federal courts. *Volt, supra,* quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974). The FAA does not create a set of rules for conducting arbitrations or a body of arbitrators for doing so; rather, it makes contracts providing for reference to arbitration fully enforceable. Although it does not completely pre-empt the field of arbitration, it constitutes substantive federal law which, by virtue of the Supremacy Clause, is as applicable in state as in federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

■ Because of the strong federal policy in favor of arbitration, the scope of judicial review under the FAA is very narrow. *Federated Dept. Stores v. J.V.B. Industries*, 894 F.2d 862, 866 (6th Cir.1990), citing *Dobbs, Inc. v. Local No. 614, International Brotherhood of Teamsters*, 813 F.2d 85 (6th Cir. 1987). In that respect, the Supreme Court has held:

> [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overcome his decision.

*United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 42–43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987). Arbitrator error in interpreting the contract or even in applying the law does not warrant a vacation of the award. *Federated Dept. Stores, supra,* citing *Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists and Aerospace Workers*, 693 F.2d 35, 38 (6th Cir.1982). Federal courts are not authorized to reconsider the merits of an award even though the parties allege the award rests on errors of fact or misinterpretations of the contract. *Board of County Commissioners of Lawrence County, Ohio v. L. Rob-*

ert *Kimball and Associates,* 860 F.2d 683 (6th Cir.1988), citing *Misco,* 484 U.S. at 36–38, 108 S.Ct. at 370. The sole grounds for vacation of an award are those set forth in 9 U.S.C. § 10 and the additional ground that the arbitrator's decision is in "manifest disregard of the law," an authorization which is also narrowly construed. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Annotation, Vacation of Arbitration Award,* 20 ALR Fed 295 (1974).

Applying the foregoing law, the Court arrives at the following conclusions:

## THE COMPENSATORY AWARD OF $10,710.95 TO NCR MUST BE CONFIRMED

Neither party contests the propriety of this Award (Ex. BB to Doc. # 2). NCR offered to forego confirmation in the event that both of the other Awards were vacated. In light of the Court's action on the other Awards, there is no occasion to accept that offer.

## THE COMPENSATORY AWARD OF $58,896.00 TO ACME MUST ALSO BE CONFIRMED

### 1. The Arbitrator's Refusal to Apply a Statute of Limitations Was Not in Manifest Disregard of the Law.

█ NCR argues strongly that Arbitrator Ganz's refusal to apply any statute of limitations, and particularly New York's, to Acme's unfair competition claims was in manifest disregard of the law. The Court disagrees.

Before the Arbitrator, NCR established that any cause of action Acme had for unfair competition had accrued by and was known to Acme by 1984. Thus NCR was able to make a forceful argument that those claims were barred by a number of potentially applicable provisions of the New York Civil Practice statute (See Doc. # 2, Ex.M). However, the effect of a statute of limitations is to bar an action at law, not arbitration. See *Annotation, Statute of Limitations as Bar to Arbitration under Agreement,* 94 ALR 3d 533, § 2 (1979). Had these claims remained pending in the New York Supreme Court, NCR would have had an excellent motion to

dismiss the counterclaims as barred by the statute. It chose instead to demand the claims be arbitrated.

States may have specific statutes of limitations barring actions to compel arbitration after a certain time or general limitations on contractual actions may have the same effect. That is not, however, the issue here: there is no claim that NCR's demand for arbitration was untimely.

NCR attempts to distinguish, both here and before the arbitrator, between the timeliness of a demand for arbitration and the timeliness of the underlying claims (See Ex.P to Doc. # 2). That is a valid distinction, but it is not helpful to NCR. If the statutes of limitations on which NCR relies were of the sort that purport to extinguish claims, rather than limit actions in court, they might be relevant, but they do not purport to be statutes of that sort. Rather, on their face they limit the bringing of actions.

The case authority relied upon by NCR is not to the contrary. In *Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd.,* 204 F.2d 366 (2d Cir.1953), the question was the timeliness of the action to compel arbitration. In *Miller v. Prudential Bache Securities, Inc.,* 884 F.2d 128 (4th Cir.1989), the arbitrators had applied the Maryland statute of limitations under the New York borrowing statute; the plaintiff asserted this was an error of law, but the Fourth Circuit, consistently with principles cited above, held that the question of which statute of limitations, if any, to apply was for the arbitrators to decide and their award would not be set aside for mere mistake of law. In *Son Shipping Co. v. DeFosse & Tanghe,* 199 F.2d 687 (2d Cir, 1952), relied upon by the Arbitrator, the Second Circuit specifically held a statute of limitations on an underlying claim did not apply when the claim was to be arbitrated. In *Office of Supply, Government of the Republic of Korea v. New York Navigation Co., Inc.,* 469 F.2d 377 (2d Cir.1972), it was held not to be a manifest disregard of the law for an arbitrator to honor a limitations clause from a statute incorporated by reference into the contract between the parties. There is no doubt that NCR and Acme could have lawfully incorporated into the 1982 Agree-

ment either an express limitation on claims or incorporated a statute of limitations by reference, but they did not do so.

Thus the Court concludes that the Arbitrator was correct in holding that the statute of limitations is not directly applicable in arbitration and in not applying a statute here, but rather finding that the right to obtain arbitration had to be exercised within a reasonable time. And of course, even if the Arbitrator had been wrong, this Court would have no authority to review the merits of his decision on this issue.

## 2. NCR's Other Asserted Grounds for Vacating the Compensatory Award Are Not Persuasive.

■ NCR also argues that the award of compensatory damages was fundamentally unfair because the Arbitrator's calculation of Acme's lost profits was based on a theory which he announced after the close of the evidence, so that NCR was not given an opportunity to be heard.

In support of this claim, NCR relies on cases which have vacated arbitral awards because a party was not given notice of claims against it or was denied the opportunity to present evidence. That is not the situation presented here. Rather, NCR knew all along that Acme sought lost profits. Acme apparently proceeded upon one method of proving such profits (loss of specific customers) for some time and then abandoned that theory in favor of a projection from profits it was making. The Arbitrator announced he was dissatisfied with that theory and inquired about sales actually made by NCR. He then based his calculation of damages on what he calculated those sales to have been.

NCR asserts that it has good evidence that the Arbitrator seriously overestimated those damages, and it presents to this Court evidence it would have presented had it been given an opportunity. It admits, however, that it never sought an opportunity to present that evidence; it merely gathered the evidence and waited for the Arbitrator to call. This is not the same as being denied the chance to proffer evidence which it asked to present. Moreover, NCR admits that the total compensatory award made by the Arbi-

trator is much closer to the range suggested by NCR's evidence than to anything Acme presented.

Under these circumstances, the Court finds NCR's argument an attempt to have this Court review the merits of the compensatory award. As the authority cited above makes clear, the Court lacks the power to do so, no matter how convincing a case NCR might make with the new evidence. NCR contracted for arbitration, not judicial process.

## THE PUNITIVE DAMAGES AWARD MUST BE VACATED

In his Third Award, Arbitrator Ganz made "a punitive damage award in the sum of $1,335,180.00 ... against NCR Corporation" and in favor of all entities or persons who were non-servicing NCR dealers as of May 25, 1984. The parties agree that the portion of this award in favor of non-parties to the arbitration, to wit, all the non-servicing NCR dealers, is in excess of the Arbitrator's powers and must be vacated. Acme seeks to retain the entire award for itself, but the Court concludes that the entire award must be vacated, although not all of the reasons for doing so argued by NCR are sound.

## 1. The Arbitrator Had the Power to Make a Punitive Damages Award.

■ NCR argues that because the substantive law of New York is applicable to this arbitration and New York prohibits arbitrators from awarding punitive damages, Arbitrator Ganz had no power to do so. Acme counters that the New York rule in question, announced in *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976), is not applicable to arbitration proceedings under the FAA and is against the great weight of authority in other jurisdictions.

The parties' positions sidestep a crucial point: it is not the FAA which confers powers on arbitrators, but the contract between the parties submitting an issue to arbitration. In this case, the parties did not expressly grant or deny the arbitrator power with respect to punitive damages, but they did ex-

174

pressly incorporate into the 1982 Agreement the provision that any arbitration would be under the Rules of the American Arbitration Association. Rule 43 of those Rules provides in pertinent part:

> The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

The arbitrator's powers thus turn on an interpretation of this incorporated Rule, not on an interpretation of the FAA.

In interpreting Rule 43, numerous courts have held that it is broad enough to authorize arbitrators to award punitive damages. See *Raytheon Co. v. Automated Business Systems, Inc.*, 882 F.2d 6 (1st Cir.1989); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056 (9th Cir.1991); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir.1988). While the Sixth Circuit has not discussed a possible award of punitive damages under this Rule, it has found the Rule broad enough to authorize an arbitrator to enter a preliminary injunction, a function ordinarily reserved to judges while lay juries are permitted to award punitive damages. *Island Creek Coal Sales v. Gainesville*, 729 F.2d 1046 (6th Cir.1984).

These cases must be distinguished from those relied on by NCR which invalidate awards of punitive damages. Those cases have either proceeded under a specific choice of law clause which made New York law, and therefore the *Garrity* rule, applicable, or they have been under the narrower arbitration rules of the New York Stock Exchange or the National Association of Securities Dealers. *See, e.g., Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117 (2d Cir.1991) (specific New York choice of law clause, NYSE rules); *Thomson McKinnon Securities, Inc., v. Cucchiella*, 32 Mass.App.Ct. 698, 594 N.E.2d 870 (1992) (same).

■ Arbitrator Ganz's power to award punitive damages here must be upheld on an additional basis, one not argued by the parties. It is well established that a party who successfully asserts a position in litigation is then judicially estopped from asserting a con-

tradictory position in the same or subsequent litigation between the same parties. 31 C.J.S. Estoppel, §§ 118, 119. Here NCR successfully asserted to the New York Supreme Court that Acme's unfair competition claims, including the claims for punitive damages, were arbitrable under the 1982 Agreement. The New York Supreme Court agreed with that position and stayed Acme's action pending submission of the claims to arbitration (See Decision of Justice Fischer, Ex. D. to Doc. # 2). Having asserted that the punitive damages claims were arbitrable, NCR cannot now be heard to deny it.

**2. The Arbitrator Exceeded His Powers in Awarding Punitive Damages to Non-Parties.**

This point is conceded by the parties and supported by law cited by NCR.

**3. The Punitive Damages Award Must Be Vacated Rather than Modified.**

■ Acme argues that the Court should modify the Third Award to make the punitive damages payable only to it. It notes that the purpose of punitive damages in general is to punish misconduct and the Arbitrator clearly decided that NCR's conduct with respect to its non-servicing dealers merited punishment. Since the Arbitrator had the power to award punitive damages, Acme says, that power should be vindicated by modifying the Third Award to make the punitive damages payable only to Acme.

NCR responds that its conduct, as found by the Arbitrator, was not sufficient to warrant punitive damages under the applicable New York standards, but the Court declines to engage in this analysis, which would amount to a review of the merits of the arbitral award.

A federal district court's power to modify an award under 9 U.S.C. § 11(c) is extremely limited, available only when the award "is imperfect in matter of form not affecting the merits of the controversy" and then only to "effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11; *Island Creek Coal Sales v. Gainesville*, 764 F.2d 437, 440 (6th Cir.1985). In this case, vacating that portion of the Third Award which

allows punitive damages to non-parties would both affect the merits and not effect the intent of Arbitrator Ganz. As to the merits, such action by the Court would shift over $1.3 million from the non-parties to Acme. Arbitrator Ganz specifically noted his intention not to award all of the punitive damages to Acme, so the modification would result in what he himself called a "windfall" to Acme. While Arbitrator Ganz included very general severability language in his Decision, he did not in any way indicate that language was intended to permit redirecting the punitive damages award as Acme requests.

The Court likewise declines the suggestion to confirm that portion of the punitive damages award which would represent Acme's pro rata share of the punitive damages. There is no evidence before the Court of how many non-servicing dealers NCR had in May, 1984, nor would taking such evidence be consistent with the very limited role of federal courts in reviewing arbitral awards.

## CONCLUSION

In accordance with the foregoing decision, the Clerk shall enter judgment as follows:

1. In favor of NCR and against Acme, CONFIRMING the award of $10,710.95;

2. In favor of Acme and against NCR, CONFIRMING the award of $58,896.00 plus all arbitration administrative expenses and arbitrator's compensation and expenses; and

3. In favor of NCR and against Acme, VACATING the award of punitive damages.

Netting the first two awards, the Clerk shall enter a money judgment in favor of Acme and against NCR in the amount of $48,185.05. In addition, NCR is hereby ORDERED to reimburse Acme for any portion of the arbitration expenses prepaid by Acme.