Timothy J. KNUTSON, Plaintiff,

v.

AG PROCESSING, INC., Defendant.

No. C01–3015–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Feb. 13, 2004.

Blake Parker, Blake, Parker Law Office, Fort Dodge, IA, Michael J. Carroll, Babich, Goldman, Cashatt & Renzo, PC, Des Moines, IA, for Plaintiff.

Becky S. Knutson, Lisa L. Ash, Davis, Brown, Koehn, Shors & Roberts, Des Moines, IA, for Defendant.

**MEMORANDUM ORDER AND OPINION REGARDING PLAINTIFF'S MOTION TO COMPEL REINSTATEMENT OR IN THE ALTERNATIVE FRONT PAY; DEFENDANT'S MOTION TO STAY EXECUTION OF JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................... 1027

II. LEGAL ANALYSIS ............................................................. 1028
 A. Arguments Of The Parties ........................................... 1028
 B. Jurisdiction ....................................................... 1030
 C. Defendant's Motion to Stay Execution of Judgment ................... 1032
 1. Monetary relief .............................................. 1032
 2. Injunctive relief (order of reinstatement) ................... 1033
 a. Likelihood of AGP's success on the merits ............... 1035
 b. Irreparable injury to AGP absent a stay ................. 1036
 c. Substantial harm to Knutson if a stay is granted ........ 1038
 d. Public interest ......................................... 1038
 D. Plaintiff's Motion to Compel Reinstatement ......................... 1039

III. CONCLUSION ................................................................. 1041

### I. INTRODUCTION

On July 28, 2003, this court filed its "Memorandum Opinion and Order Regarding Defendant's Motion for Judgment as a Matter of Law, or, Alternatively, for New Trial; Plaintiff's Motion for Prohibitory Injunction, for Reinstatement; Plaintiff's Motion for Attorney's Fees and Costs" (Doc. No. 88) in this case, awarding plaintiff Timothy Knutson ("Knutson") the following relief:

- Reinstatement to the position of boiler operator in Ag Processing, Inc.'s ("AGP") Eagle Grove, Iowa plant.

- Enjoining AGP from "any further perceptions of disability discrimination and any retaliatory conduct toward Mr. Knutson" following the plaintiff's reinstatement.

- Attorney's fees and costs in the amount of $29,659.06.

- Judgment on the jury's award of back-pay and punitive damages in the amounts of $55,345.72 and $90,000, respectively.

*Knutson v. Ag Processing, Inc.,* 273 F.Supp.2d 961, 1022–23 (N.D.Iowa 2003). On August 27, 2003, AGP filed a timely Notice of Appeal to the Eighth Circuit Court of Appeals on a number of issues, including but not limited to, the propriety of the court's order of reinstatement and injunctive relief. (Doc. No. 96). On September 10, 2003, plaintiff Knutson filed a Motion to Compel Reinstatement or in the Alternative Front Pay, in which the plaintiff states that he has not yet been reinstated in violation of the judgment of this court, and seeks an order of this court either compelling AGP to reinstate him, or alternatively, awarding him front pay from the date of the judgment through the date of his eventual reinstatement. (Doc. No. 97). On September 10, 2003, Knutson also filed a Notice of Appeal to the Eighth Circuit Court of Appeals regarding this court's ruling on the Plaintiff's Motion for Prohibitory Injunction and Reinstatement denying front pay to the point of reinstatement. (Doc. No. 96). On October 3, 2003, AGP filed both a timely resistance to the plaintiff's motion to compel reinstatement, as well as a Motion to Stay Execution of the Judgment. (Doc. Nos. 104 & 105). Plaintiff Knutson filed a Reply Brief in response to the Defendant's resistance to his motion to compel reinstatement on October 10, 2003. (Doc. No. 106). On October 14, 2003, Knutson filed a response to AGP's motion to Stay Execution of the Judgment. (Doc. No. 107). On October 21, 2003, AGP filed a reply to Knutson's response to AGP's motion to Stay Execution of the Judgment. This matter is now fully submitted to the court.

Oral arguments on the plaintiff's motion to compel reinstatement and the defendant's motion to stay execution of judgment were held on February 12, 2004. At oral argument plaintiff Timothy J. Knutson was represented by Blake Parker of the Blake Parker Law Office in Fort Dodge, Iowa. Defendant AGP was represented by Becky Knutson of Davis, Brown, Koehn, Shors & Roberts in Des Moines, Iowa.

## II. LEGAL ANALYSIS

### A. Arguments Of The Parties

Plaintiff Knutson asserts, and AGP does not deny, that despite the order of this court on July 28, 2003, requiring that Knutson be reinstated to the position of boiler room operator in AGP's Eagle Grove, Iowa plant, that AGP has not yet made any efforts to reinstate the plaintiff. As such:

> every day that goes by without reinstatement, the plaintiff loses out on a days worth of pay, without any ability to recoup that loss. With the case now on appeal—and with no offer coming from AGP to reinstate the plaintiff—the plaintiff is looking at an additional six months to a year without employment and without a paycheck. There is no downside to the defendant to appealing the case. They get to "thumb their nose" at the Court's decision, yet not have to pay any front pay to the date of the Appeals Court decision—if the decision is not in their favor. The only option available to plaintiff is to compel the current court order.

Plaintiff's Brief in Support of Motion to Compel Reinstatement or in the Alternative Front Pay, Doc. No. 97, at pg. 2 ("Plf.'s Brief I"). Relying on the fact that reinstatement is the favored remedy for unlawful employment discrimination, and that the language of this court's order is mandatory, the plaintiff asks that the court compel AGP to reinstate the plaintiff. In the alternative, should the court determine that compelling reinstatement is not appropriate, the plaintiff argues that an award of front pay, from the time of the judgment on July 28, 2003 until Knutson is reinstated, would be appropriate: "As an alternative the Court could order that the plaintiff be given a pay check—comparable to wages of a boiler operator at the AGP plant in Eagle Grove—each pay period, until such time as the appeal is completed." Plf.'s Brief I at pg. 3–4.

In response to the plaintiff's motion to compel, defendant AGP filed a motion to stay execution of the judgment coupled with its resistance to the plaintiff's motion to compel reinstatement. In it's brief in support of both its resistance and motion to stay, AGP asserts that it is unequivocally entitled to a stay of enforcement of the monetary portion of the judgment upon the posting of a supersedeas bond with the court pursuant to Federal Rule of Civil Procedure 62(d), and further that it is entitled to a stay of the nonmonetary portion of the judgment (i.e. reinstatement) by virtue of Federal Rule of Civil Procedure 62(c). AGP states that it is more than willing to post a bond "to cover the cost of Mr. Knutson's pay pending the outcome of appeal." Defendant's Brief in Support of its Motion to Stay Execution of the Judgment and Resistance to Plaintiff's Motion to Compel Reinstatement, Doc. Nos. 104 & 105, at pg. 9 ("Def.'s Brief I"). AGP then asserts that as the authorities proffered by plaintiff to support his motion to compel reinstatement do not account for situations where the opposing party has filed a motion to stay execution of judgment, that the plaintiff's motion to compel reinstatement or alternatively grant front pay should be denied.

In response to AGP's motion to stay execution of the judgment, plaintiff as-

serts that defendant is not entitled to a stay on the execution of the nonmonetary portions of the judgment (i.e.reinstatement), for failure to meet the requisite four factor test. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) (reciting the four factor test for determining whether a stay of injunctive relief is appropriate pending appeal). Specifically, plaintiff asserts that AGP has failed to make a strong showing that it is likely to succeed on the merits in the appeal, and that the balancing of the harms clearly weighs in Knutson's favor. With regard to the issue of front pay, Knutson argues that AGP, in arguing for a stay of the nonmonetary relief, has supported the idea of front pay with its statements that it is "willing to post an appropriate bond to cover the cost of Mr. Knutson's pay pending the outcome of the appeal." Def.'s Brief I at pg. 9. Plaintiff asserts that the Iowa legislature has addressed this scenario, in that Iowa Code § 91A.8 penalizes employers who fail to pay required wages by making them pay the injured employee twice the wages withheld. Knutson asserts that, under section 91A.8, that AGP wrongfully, and knowingly, does not pay Knutson his wages during the time pending appeal, "[AGP] should be required to pay twice the wages that would regularly be due." Plaintiff's Reply Brief to Defendant's

Brief in Support of Resistance to Motion to Compel Reinstatement, Doc. No. 106, at pg. 4 ("Plf.'s Brief II"). In closing, Knutson prays that the court not stay the order of reinstatement, but if reinstatement is stayed that the court: (1) order AGP to pay front pay from the time of the court's judgment on July 28, 2003 until the time the Eighth Circuit Court of Appeals rules on the matter; (2) order AGP to pay Knutson twice the amount of unpaid wages as "required by the state legislature"; and (3) to order a supersedeas bond in an amount adequate to protect Knutson if AGP does not prevail on appeal.[1] Plf.'s Brief II at pg. 5–6.

Defendant AGP filed a reply in support of its motion to stay execution, which focused on disputing two of the plaintiff's assertions. First, AGP argues that Iowa Code Chapter 91A is inapplicable as it does not apply to wages that have not been earned, or where there is a legitimate dispute over whether the wages are due and owing. Second, AGP takes issue with the plaintiff's statement that it is known that "the plaintiff [currently] is attempting to get public benefits because he is not employed." Plf.'s Brief II at pg. 4. Specifically, AGP argues there is no basis in the record for any finding that the plaintiff is unemployed, and that any award of front pay would be contingent on factors that will not be known until after the Eighth

---

1. Though the Plaintiff's Reply Brief to Defendant's Brief in Support of Resistance to Motion to Compel Reinstatement (Doc. No. 106) ("Plf.'s Brief II") seems to address the plaintiff's arguments for why a stay of execution of the ordered reinstatement should not be granted, the plaintiff also filed a "Reply to Motion to Stay Execution" (Doc. No. 107) which: (1) requests the court set an appropriate supersedeas bond; (2) requests that if the judgment of reinstatement is stayed that the court should "'correct' the current impression that the Plaintiff is not entitled to 'front pay' [pending appeal] to insure that the Defendant would not later be able to argue that

because front pay was not ordered (in lieu of reinstatement) that the plaintiff should not be entitled to interim payment during the time of the appeal."; and (3) requests that AGP be required to produce evidence of 'comparable wages' of a person in a position similar to the plaintiff with regard to position, seniority, education, and skill level. Plaintiff's Reply to Motion to Stay Execution, Doc. No. 107 (Plf.'s Brief III) at pg. 1–2. Further, plaintiff states that in lieu of compelling reinstatement that he "does not resist the concept of a supersedeas bond, so long as the Court grants the plaintiff the concept of 'front pay' pending successful appeal of the case." *Id.* at 2.

Circuit Court of Appeals has heard the appeal (i.e. amount of pay plaintiff would have earned as a boiler room operator for AGP and plaintiffs interim earnings between the time of this court's judgment and the time of the Eighth Circuit's disposition of the case).

## B. Jurisdiction

█ In *Griggs v. Provident Consumer Discount Company,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), the United States Supreme Court laid out the following jurisdictional transfer principle:

> [I]t [is] generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

*Id.* at 58, 103 S.Ct. 400; *see also Gundacker v. Unisys Corp.,* 151 F.3d 842, 848 (8th Cir.1998) ("Generally, a notice of appeal divests the district court of jurisdiction."); *Harmon v. U.S. Through Farmers Home Admin.,* 101 F.3d 574, 587 (8th Cir.1996) ("A notice of appeal divests the district court of 'those aspects of the case involved in the appeal.'") (quoting *Liddell v. Bd. of Educ.,* 73 F.3d 819 822 (8th Cir.1996) (quoting *Griggs*)); *Johnson v. Hay,* 931 F.2d 456, 459 n. 2 (8th Cir.1991) (quoting *Griggs*); *U.S. v. Ledbetter,* 882 F.2d 1345, 1347 (8th Cir.1989) (noting that the *Griggs* rule applies "with equal force to criminal cases."); *Bd. of Educ. of St. Louis v. State of Missouri,* 936 F.2d 993, 995 (8th Cir. 1991) (noting that except in limited circumstances, the "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over matters involved in the appeal."). "So complete is the transfer of jurisdiction that any orders of the district court touching upon the substance of the matter on appeal are considered null and void if entered subsequently to the filing of the notice of appeal." 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3949.1 (3d ed. 1999) ("Federal Practice and Procedure"); *cf. Liddell,* 73 F.3d at 823 (noting that a party can not appeal denial of attorneys fees to federal court of appeals and then turn around and seek the same fees from the district court under another theory of recovery). Under the jurisdictional transfer principle, once an effective and timely notice of appeal has been filed under Federal Rule of Appellate Procedure 3, the federal district court cannot take any action that would "alter the status of the case as it rests before the Court of Appeals." *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.,* 906 F.2d 1059, 1063 (5th Cir. 1990); *see State ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1106 (8th Cir.1999) ("while an appeal is pending, the district court may not reexamine or supplement the order being appealed") (citing 20 Moore's Federal Practice § 303.32[2][a][ii] & n. 15); *Jordan v. Fed. Farm Mortg. Corp.,* 152 F.2d 642, 644 (8th Cir.1945) ("The general rule is that after appeal from the District Court to the Circuit Court of Appeals has been perfected the District Court loses jurisdiction of the cause."); Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal has Been Filed,* 143 F.R.D. 307, 308 (1992) ("Ides") (listing the following actions as acts that would impermissibly alter the status of the case in violation of the jurisdictional transfer principle: "grant leave to amend a complaint, grant a motion for summary judgment, reconsider a prior disposition of a motion, dismiss a case pursuant to a stipulation of settlement, enjoin a state court action, materially amend an opinion or order, [and] vacate a dismissal").

The jurisdictional transfer principle is not absolute, and therefore there are distinct situations in which the principle does not apply. *See Coeur D'Alene Tribe,* 164 F.3d at 1106 (noting that the jurisdictional principle espoused by *Griggs* is not absolute). First, the jurisdictional transfer principle does not divest the district court of all jurisdiction—but rather, only of jurisdiction over the matters appealed. *See Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). The district court retains jurisdiction to adjudicate matters collateral, or tangential, to the appeal. *See Harmon,* 101 F.3d at 587 ("where the issue of attorney fees is not before the court of appeals ... the district court may consider it"); *Davis v. Hall,* 259 F.Supp.2d 906, 908 (E.D.Mo.2003) (recognizing that the district court retains jurisdiction over matters collateral to the appeal); *Robinson v. Eng,* 148 F.R.D. 635, 637 (D.Neb.1993) (determining whether Rule 11 sanctions were appropriate after recognizing that sanctions were collateral to the merits of the pending appeal); 16A FEDERAL PRACTICE AND PROCEDURE § 3494.1 ("The district court may also resolve collateral matters that do not interfere with the appeal."). Second, where the notice of appeal is clearly defective, the district court can proceed as if no appeal has been filed. Ides, *supra,* 143 F.R.D. 307.

Finally, the Federal Rules provide for various courses of action that a district court can take despite the fact that an appeal is pending. Even where an appeal is pending, a district court retains jurisdiction to:[2]

- Correct clerical mistakes. *See* FED. R. CIV. P. 60(a) ("During the pendency of an appeal [clerical] mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.").

- Consider a post-judgment renewal of a prior motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). FED. R. APP. P. 4(a)(4)(A)(i).

- Consider a post-judgment motion to amend findings or make additional findings under Federal Rule of Civil Procedure 52(b). FED. R. APP. P. 4(a)(4)(A)(ii).

- Consider a post-judgment motion to alter or amend a judgment, or for a new trial, under Federal Rule of Civil Procedure 59. FED. R. APP. P. 4(a)(4)(A)(iv) & (v); *See Flieger v. Delo,* 16 F.3d 878, 882 (8th Cir.1994) ("A notice of appeal filed while a Rule 59(e) motion is pending is a nullity.").

- Grant relief under Federal Rule of Civil Procedure 60 if the motion for such relief is filed within 10 days after the entry of judgment. FED. R. APP. P. 4(a)(4)(A)(vi); *see* FED. R. CIV. P. 60(b) (allowing the court to relieve a party from a final judgment where: (1) there is a showing of mistake, inadvertence, surprise, or excusable neglect; (2) discovery of new evidence that could not have been uncovered with due diligence at an earlier time; (3) fraud or misrepresentation; (4) the judgment is found to be void; (5) the judgment has been satisfied, released or discharged; or (6) any other reason justifying relief from the operation of the judgment).

2. This list is by no means exhaustive. The list provides merely a sampling of the matters the district court retains jurisdiction over pending appeal in a civil matter. A district court retains authority over many other matters, despite appeal to an appellate court, in both civil and criminal cases that are not pertinent to the case at hand. *See* Ides, *supra,* 143 F.R.D. 307.

- Require an appellant to "file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7.
- Suspend, modify, restore or grant an injunction pending appeal, where the judgment granted, dissolved or denied an injunction. FED. R. CIV. P. 62(c); FED. R. APP. P. 8.

Additionally, "the district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 n. 2 (5th Cir.1984); *see State of Colorado v. Idarado Min. Co.*, 916 F.2d 1486, 1490 n. 2 (10th Cir.1990) (noting that the district court was not divested of jurisdiction to enforce its grant of a mandatory injunction pending appeal); *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (quoting *Nicol*); *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 439 (6th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985)(finding that district court is not, by virtue of a pending appeal, divested of ability to supervise its judgment through civil contempt proceedings). With these jurisdictional principles in mind, the court turns to the substance of the parties' motions.

### C. Defendant's Motion to Stay Execution of Judgment

As the court's ability to compel enforcement of it's judgment is contingent on whether or not the judgment has been stayed or superseded, it is therefore proper for the court to first determine whether or not a stay is appropriate.

### 1. Monetary relief

Federal Rule of Civil Procedure 62(d) provides:

> **(d) Stay Upon Appeal.** When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

FED. R. CIV. P. 62(d). *Dockendorf v. Dakota County State Bank*, 673 F.2d 961, 968 (8th Cir.1981) (finding district court had the discretion to stay execution of the judgment pending appeal to the Eighth Circuit Court of Appeals under Rule 62(d), as long as the defendant posted a supersedeas bond). "With respect to a case arising in the federal system it seems to be accepted that a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed.R.Civ.P. 62(d) and 73(d)." *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting–Paramount Theatres, Inc.*, 87 S.Ct. 1, 2, 17 L.Ed.2d 37 (1966) (Memorandum of Harlan, J., Circuit Justice); *U.S. v. Wylie*, 730 F.2d 1401, 1402 (11th Cir.1984); *Malarkey v. Texaco, Inc.*, 794 F.Supp. 1248, 1249 (S.D.N.Y.1992) ("A party is entitled to post a bond and stay execution of a monetary judgment as a matter of right.") (citing *Am. Mfrs. Mut. Ins. Co.*); *Enter. Leasing Co. v. Metro. Airports Comm'n*, 193 F.R.D. 641, 643 (D.Minn.2000), *rev'd on other grounds by* 250 F.3d 1215 (8th Cir. 2001) ("An appellant may request and obtain a stay of judgment pending appeal as a matter of right upon posting a supersedeas bond."); *U.S. v. U.S. Fishing Vessel Maylin*, 130 F.R.D. 684, 686 (S.D.Fla.1990) ("Stay as a matter of right lies where the judgment involved is monetary"); 12 MOORE'S FEDERAL PRACTICE § 62.03 ("An appealing party is entitled to a stay of enforcement as a matter of right under Rule 62(d) if a supersedeas bond is filed with the court."); *but cf. Stanfield v.*

*Brookshire Grocery Co.,* 761 F.Supp. 29, 30 (W.D.La.1991) (finding that *American Manufacturers Mutual Insurance Company v. American Broadcasting–Paramount Theatres,* 87 S.Ct. 1, 17 L.Ed.2d 37 (1966) did not carry the precedential weight of a United States Supreme Court opinion as it was merely a memorandum authored solely by Justice Harlan, and regardless of the weight to be accorded the decision, it was irrelevant to the case at hand). Plaintiff Knutson offers no argument resisting the stay of the monetary judgment upon the posting of a supersedeas bond·by the defendant.

■ AGP has not yet posted a supersedeas bond, but has offered to do so upon the court's fixation of an appropriate bond amount. Unlike other jurisdictions, the local rules of this court do not require the supersedeas bond to be in a certain amount, but rather leaves the fixation of the bond amount in the discretion of the court. "The amount of a supersedeas bond typically takes into account the amount needed to satisfy the judgment appealed from, as well as costs, interest, and any damages which might be caused by the stay pending appeal." 5 AM. JUR. 2D. *Appellate Review* § 441 (Supp.2003). By courtesy copy received by fax on February 12, 2004, AGP requests the supersedeas bond be set in the amount of

$213,000.00. In it's request AGP asserts that the plaintiff does not object to this bond amount. As such, the court **grants** AGP's motion for stay of the money judgment, providing AGP posts a supersedeas bond in the **amount of $213,000.00 on or before March 1, 2004.** Upon posting the supersedeas bond the plaintiff is enjoined from executing the awards of backpay, punitive damages, and attorney's fees.[3]

### 2. Injunctive relief (order of reinstatement)

■ The suspension of equitable or injunctive relief ordered by a district court during the pendency of an appeal is authorized by Federal Rule of Civil Procedure 62(c).[4] Rule 62(c) "codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment." 11 FEDERAL PRACTICE AND PROCEDURE § 2904; *cf. Scripps–Howard Radio v. Fed. Communications Comm'n,* 316 U.S. 4, 9–10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) ("It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal."); *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.,* 925 F.2d 556, 565 (2d Cir.1991) (upholding in-

---

3. The posting of the supersedeas bond stays the enforcement of the money judgment only, and has no effect on the enforcement of the injunctive and equitable relief ordered by the court. 11 FEDERAL PRACTICE AND PROCEDURE § 2905 at pg. 519 ("If judgment includes both a money award and the grant or denial of an injunction, a supersedeas stays the money award but not the part of the judgment that deals with injunctive relief.")

4. Federal Rule of Civil Procedure 62(c) provides:

(c) **Injunction pending appeal.** When an appeal is taken from an interlocutory or final judgment granting, dissolving, or de-

nying an injunction, the court in its·discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

FED. R. CIV. P. 62(c). As discussed *supra,* the district court retains jurisdiction to grant or deny a stay of an injunction pending appeal of the case pursuant to the authority of Rule 62(c). *See* David J. Healy, et al., *From Final Judgment to Notice of Appeal: An Overview of Post–Judgment, Supersedeas and Stays Pending Appeal, and Notices of Appeals From Final Judgments in Federal Court,* 5 FED. CIR. BAR J. 1, 23 (Spring 1995) ("Healy").

junction where district court found injunctive relief necessary to preserve the status quo); *Hoffman v. Beer Drivers & Salesmen's Local,* 536 F.2d 1268, 1276 (9th Cir. 1976) (recognizing that the district court has a "continuing duty to maintain the status quo"). "Maintaining the status quo means that a controversy will still exist once the appeal is heard." 12 MOORE'S FEDERAL PRACTICE § 62.06 (Matthew Bender 3d ed.); *see Coastal Corp. v. Texas E. Corp.,* 869 F.2d 817, 820–21 (5th Cir.1989) (noting that a district court should only use Rule 62(c) in order to maintain the status quo). Reinstatement is a form of equitable relief which the court has the power to suspend pursuant to Rule 62(c). *See Newhouse v. McCormick & Co.,* 110 F.3d 635, 641 (8th Cir.1997) (classifying reinstatement as a form of equitable prospective relief available to individuals prevailing on their claims of employment discrimination); *Dutton v. Johnson County Bd. of County Comm'rs,* 884 F.Supp. 431, 433 (D.Kan.1995) (noting the district court's power under Rule 62(c) to suspend enforcement of an order of reinstatement where all of the requirements have been met).

 The factors regulating the issuance of a stay under Rule 62(c) are: [5]

1. Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

2. Whether the applicant will be irreparably injured absent a stay;

3. Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

4. Where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *Arkansas Peace Ctr. v. Arkansas Dept. of Pollution Control,* 992 F.2d 145, 146 (8th Cir. 1993) ("Defendants, as the parties seeking a stay pending appeal, must show that (1) they are likely to succeed on the merits, (2) they will suffer irreparable injury unless the stay is granted, (3) no substantial harm will come to other interested parties, and (4) the stay will do no harm to the public interest."); *James River Flood Control Ass'n v. Watt,* 680 F.2d 543, 544 (8th Cir.1982) ("The party seeking a stay pending appeal must show (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury unless the stay is granted; (3) that no substantial harm will come to other interested parties; and (4) that the stay will do no harm to the public interest."); *Reserve Mining Co. v. U.S.,* 498 F.2d 1073, 1076–77 (8th Cir.1974) ("In considering whether our ... stay of the injunction should remain in effect, we note the usual formulation of the applicable standards to be met by the party seeking a stay under FED. R. CIV. P. 62 and FED. R. APP. P. 8:(1) a strong showing that he is likely to succeed on the merits of the appeal; (2) a showing that, unless a stay is granted, he will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties; and (4) a

---

5. The court notes that the factors considered in determining whether to grant a stay are essentially the same as those factors considered in determining whether preliminary injunctive relief is appropriate. *See Dataphase Sys. Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (laying out the following four factors for examination in considering whether a preliminary injunction should issue: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between the harm and the injury that granting the injunction

will inflict on the other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."); *accord Packard Elevator v. Interstate Commerce Comm'n,* 782 F.2d 112, 115 (8th Cir.1986) ("The factors to be considered in granting a stay pending judicial review are essentially those factors considered in granting preliminary injunctive relief."). As such, cases describing the necessary showing under each factor in order to obtain a preliminary injunction are pertinent to this discussion.

showing that a stay will do no harm to the public interest."); *see Liddell,* 717 F.2d at 1182 (noting that *Reserve Mining* enumerated the standards for granting a stay pending appeal); *Chicago Stadium Corp. v. Scallen,* 530 F.2d 204, 207 n. 2 (8th Cir.1976) (noting that *Reserve Mining Co.* sets forth the matters the district court must consider in determining whether or not to stay an injunction pending an appeal); *Bauer v. McLaren,* 332 F.Supp. 723, 729 (D.C.Iowa 1971) (listing four factors). The four elements are not designed to be applied with mathematical firmness, but rather are individually analyzed on a case-by-case basis in order to reach a balancing of the equities in each individual situation. *See Hilton,* 481 U.S. at 777, 107 S.Ct. 2113 ("Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."). Defendant AGP, as the party seeking a stay of the order of reinstatement pending appeal, bears the burden of establishing that the balancing of the four factors weighs in its favor. *See Arkansas Peace Ctr.,* 992 F.2d at 146.

### a. Likelihood of AGP's success on the merits

AGP argues that as it has a substantial case on the merits, and has raised serious legal issues on appeal, that it has a high likelihood of success on appeal as defined by this factor. Specifically, AGP points to the fact that Knutson's claim of discrimination based on his perceived disability was 'hotly contested' by AGP, and that AGP presented evidence that: "(1) AGP did not regard Plaintiff as disabled; (2) that plaintiff was not a 'qualified individual' within the meaning of the ADA; and (3) Plaintiff was not discharged because of his perceived disability." Def.'s Brief I at pg. 7. Further, AGP argues that the appropriateness of reinstatement as a remedy is a matter of serious contention in light of the plaintiff's admissions that he is unable to perform some of the physical aspects of the boiler operator position. Plaintiff Knutson counters by pointing out that as this court has already been presented with the very issues the defendant has appealed, and as the court ruled against AGP on each issue, AGP's likelihood of success on the merits is very slim.

In order to satisfy the "likelihood of success" factor, the movant need not establish " 'absolute certainty of success,' " but only "that they are 'likely' to succeed on the merits." *Iowa Utilities Bd.,* 109 F.3d at 423 (quoting *Population Inst. v. McPherson,* 797 F.2d 1062, 1078 (D.C.Cir.1986)). Further, to prove that it is 'likely' to succeed on the merits on appeal, AGP does not need to prove that there is a greater than fifty-percent chance that it will prevail on the merits. *Dataphase Sys. Inc.,* 640 F.2d at 113. As the factors are not rigidly or mathematically applied, language of 'probability' has no place in an analysis of this factor. *See id.* "[A]t a minimum, the movant is required to show 'serious questions going to the merits.' " *Anderson v. Gov't of the Virgin Islands,* 947 F.Supp. 894, 898 (D.Vi.1996) (quoting *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)). Though only a 'likelihood' of success on the merits must be shown, the burden is a heavy one and most movants will be unable to meet this standard. 11 FEDERAL PRACTICE AND PROCEDURE § 2904; *cf.* David G. Knibs, *Federal Court of Appeals Manual* § 21.5 (4th ed. Supp.2003) (recognizing that few district court judges would find the movant likely to prevail on the merits, as doing so would be "tantamount to conceding reversible error").

In this instance, AGP has not met its burden of demonstrating that it is likely to succeed on the merits. First, at trial the jury rejected AGP's arguments that Knutson was not discriminated against based on his disability in violation of the

ADA. Second, this court, upon AGP's post-trial motions for judgment as a matter of law and for a new trial, found that the jury verdict was supported by substantial evidence. Further, the determination of the appropriate prospective relief to grant a discrimination plaintiff is solely committed to the discretion of the trial court, *see E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 555 (8th Cir.1998), and reinstatement is the preferred prospective equitable remedy. *See Salitros v. Chrysler Corp.*, 306 F.3d 562, 572 (8th Cir.2002). Ultimately, AGP's proffered reasons for its likelihood of success on appeal are nothing more than a reiteration of the objections and arguments already considered by this court in AGP's motion for summary judgment, during trial, and in resolving AGP's post-trial motions for judgment as a matter of law and for a new trial. Further, the defendant does not provide any case law which would support its assertion that it is likely to succeed on the merits. Also, though some of the issues appealed were 'hotly contested' at trial, they are by no means novel. *See Marr v. Lyon*, 377 F.Supp. 1146, 1148 (W.D.Okla.1974) (recognizing that where the issues in the case are novel, the defendants "should be given the benefit of the doubt as to whether they are likely to succeed on appeal."). Thus, while AGP "has provided a list of issues it wishes to raise before the Court of Appeals, it has not made the required 'strong showing that [it] is likely to succeed on the merits.'" *Malarkey v. Texaco, Inc.*, 794 F.Supp. 1248, 1250 (S.D.N.Y.1992) (quoting *Hilton*, 481 U.S. at 776, 107 S.Ct. 2113).

### b. Irreparable injury to AGP absent a stay

AGP contends that the reinstatement of plaintiff Knutson will cause it irreparable harm (if the Eighth Circuit Court of Appeals reverses this court's order of reinstatement), in the following manners: (1) AGP will incur unrecoverable economic damages in the form of Knutson's wages pending appeal, the cost of Knutson's benefits, the cost to pay another employee to perform the aspects of the job Knutson is unable to perform,[6] and the costs associated with transitioning the current boiler operator to another position, among others; and (2) Disruption of AGP's business, in that AGP will have to remove the current boiler operator, provide Knutson assistance in performing certain physical aspects of the job, and finally find a replacement for Knutson in the event this court's order is reversed on appeal. Def.'s Brief I at pg. 8–9. Of course, plaintiff Knutson firmly disagrees with AGP's assertions that his reinstatement would cause AGP irreparable harm. Knutson basically argues that any economic costs that AGP would incur due to his reinstatement are not 'unrecoverable,' but in fact that AGP would 'recover' these costs in the form of Mr. Knutson's superior knowledge, skill, and hard work. As to the fact that Knutson must be assisted in his boiler operator duties, namely pulling bottom ash and rodding the stokers, Knuston argues that his need of assistance does not irreparably harm AGP because (1) AGP continuously provided Knutson with such assistance in the past; and (2) AGP incurred no extra cost as a result of providing Knutson with this assistance.

 "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utili-*

---

6. Plaintiff Knutson admitted that he was unable to perform the boiler operator tasks of pulling bottom ash and rodding the stokers.

*ties Bd.*, 109 F.3d at 425 (citing *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir.1986), *cert. denied,* 484 U.S. 828, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987)); *see Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir.2003) ("Irreparable harm is not harm that is merely serious or substantial.") (citations and quotation omitted). Generally, economic loss standing alone does not constitute irreparable harm, but the threat of *unrecoverable* economic loss does amount to irreparable harm. *Iowa Utilities Bd.*, 109 F.3d at 426; *compare Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir.1985), *cert. denied,* 476 U.S. 1114, 106 S.Ct. 1968, 90 L.Ed.2d 653 (1986) ("economic loss does not, in and of itself, constitute irreparable harm") *with Baker Elec. Coop. Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir.1994) (finding irreparable harm and issuing a preliminary injunction where absence of said injunction would result in unrecoverable economic injury). Therefore, to constitute irreparable injury, the injury must be "'both certain and great; it must be actual and not theoretical.'" *Packard Elevator*, 782 F.2d at 115 (quoting *James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 545 (8th Cir. 1982)).

■ While there are certainly costs associated with AGP rehiring plaintiff Knutson to his boiler operator position (such as relocating the employee currently in that position), the court does not believe these costs rise to the level of irreparable harm. "Needless disruption [of AGP's business] and administrative inconvenience ... are not the equivalent of irreparable injury." *Malarkey*, 794 F.Supp. at 1250. AGP is a large company [7] which is likely accustomed to transferring employees as a matter of course, and will not be *irreparably* injured by reinstating a well-qualified, highly skilled former employee. *See id.* ("A corporation the size of [the defendant], which presumably shifts personnel as a matter of course, will not be irreversible injured by promoting a single, well-qualified employee."). Further, AGP has the means to recoup wages and benefits paid to plaintiff Knutson should this court's reinstatement order be reversed on appeal. *See Varicon Intern. v. Office of Personnel Mgmt.*, 934 F.Supp. 440, 448 (D.D.C.1996) ("'Recoverable economic monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business.'") (quoting *Wisconsin Gas Co.*, 758 F.2d at 674). When AGP terminated plaintiff Knutson based on his disability it took the risk that his reinstatement would be ordered, and that another employee would need to be displaced in order to comply with the order. *See Radio and Television Broadcast Eng'rs Un-*

---

7. AGP's website boasts:

Ag Processing Inc (AGP) is a farmer-owned cooperative engaged in the procurement, processing, marketing, and transportation of grains and grain products.

Since its formation in 1983, AGP has been committed to the success of its owners. Today, that is 243 local cooperatives and eight regional cooperatives, representing 250,000 farmers from 16 states throughout the United States and Canada.

AGP operates nine soybean processing plants including six plants in Iowa, located at Eagle Grove, Emmetsburg, Manning, Mason City, Sergeant Bluff, and Sheldon. Other AGP processing plants are located at Dawson, Minnesota, St. Joseph, Missouri, and Hastings, Nebraska. The Hastings plant is the first farmer-owned soybean processing facility in that state.

AGP holds the distinction of being:
- The largest "cooperative" soybean processing company in the world.
- The fourth largest supplier of refined vegetable oil in the United States.

*http://www.agp.com./about_us.shtml.* Also, both Hoover Online and Yahoo.com business profiles of AGP report that AGP had approximately 2,500 employees in 2002. *See* http://www.hoovers.com/ag-pr ocessing-inc/—ID__40011—/free-co-factsheet.xhtml; http://biz.yahoo.com/ic/40/40011.html.

*ion Local 1212 v. WPIX, Inc.*, 1989 WL 405760 at *1 (S.D.N.Y. Aug. 7, 1989). AGP has failed to demonstrate that the "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utilities Bd.*, 109 F.3d at 425. As the discussion of the remaining factors will indicate, on balance any potential harm to AGP is not outweighed by the substantial harm to plaintiff Knutson or the public interest in eradicating discrimination in employment.

### c. Substantial harm to Knutson if a stay is granted

██ AGP asserts that the grant of a stay would not significantly harm plaintiff Knutson because AGP is willing to post a bond to cover the amount of Knutson's pay pending the outcome of appeal. Therefore, according to AGP, "there is no 'down side' for plaintiff—if he is successful on appeal, he will be paid as though he had worked during the pending appeal." Def.'s Brief I at pg. 9. Plaintiff Knutson vigorously disagrees with AGP's assessment of the harm the granting of a stay would impose on him: "No person in Iowa can in good conscience argue that when they have lost their job that the loss of income is insignificant." Plf.'s Brief II at pg. 3. Knutson argues that he has been significantly damaged from the day that he was discharged, and that staying the order of reinstatement would perpetuate that damage exponentially. The court finds that in this instance the harm to plaintiff Knutson in granting a stay would be immense in comparison to any potential harm to AGP. A stay would only serve to continue Knutson's deprivation of the wages,[8] benefits and seniority he would have as an AGP employee. Further, Knutson's means are minuscule in comparison to the resources and capital AGP has at its disposal to fund this litigation—grant of a stay would only serve to amplify this inequality of the parties. Finally, the grant of a stay would force Knutson to suffer further anguish and economic hardships. Therefore, analysis of this factor clearly weighs in favor of plaintiff Knutson.

### d. Public interest

AGP relies on the case of *Thomas v. City of Evanston*, 636 F.Supp. 587, 590 (N.D.Ill.1986) for the proposition that "a delay of an injunction requiring reinstatement of an employee during the pendency of an appeal, with retroactive compensation if the employee prevails, will vindicate the public's interest in ensuring that the ADA is enforced." Def.'s Brief I at pg. 10. Further, AGP argues that staying the order for reinstatement would further the public's interest in maintaining the status quo between the parties. Plaintiff Knutson counters AGP's arguments by distinguishing *Thomas* from the case at hand in that two of the plaintiffs in *Thomas* had already been reinstated—and the public interest therefore vindicated—unlike this case. Knutson claims he is currently unemployed and attempting to procure public assistance benefits (a fact which AGP vigorously contests)—therefore, the public interest would lie in plaintiff's reinstatement as directed rather than him drawing public assistance benefits due to AGP's egregious disregard of the court's order.[9]

██ The public interest in eradicating disability discrimination clearly weighs in favor of denying a stay. "The purpose of

---

8. As the claim that Mr. Knutson is currently unemployed is not supported by evidence in the record, it will have no bearing on the court's analysis under this factor.

9. As the conclusory claim that Knutson is unemployed and seeking public assistance benefits is not supported by record evidence, and is disputed by AGP, it carries no weight in determining where the public interest lies.

the ADA is broad and remedial: It is designed to provide 'a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' " *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 487 (8th Cir.1996)(quoting 42 U.S.C. § 12101(b)(1)); *see also Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000) (noting that "the ADA is a remedial statute ... and should be broadly construed to effectuate its purpose:"); *Huber v. Gazette Co.*, 1999 WL 33656874 at *3 (N.D.Iowa 1999) ("The ADA forbids employers from discriminating against an otherwise qualified employee with a disability, because of that disability."). Staying the court's order of reinstatement would send the message that "discriminatory employers can continually run over victims of discrimination and make a mockery of civil rights legislation. This is a message this court will not send." *Duke v. Uniroyal, Inc.*, 777 F.Supp. 428, 434 (E.D.N.C.1991). "A jury and this court has found the plaintiff is entitled to reinstatement. The public interest would be best served by permitting plaintiff to return to the position he was unlawfully removed from without unnecessary delay." *Dutton v. Johnson County Bd. of County Comm'rs.*, 884 F.Supp. 431, 435 (D.Kan.1995). Further, delaying reinstatement will also discourage less persistent litigants from seeking redress for illegal employment discrimination. *Malarkey*, 794 F.Supp. at 1251. The public interest is undoubtedly better served by plaintiff's hasty reinstatement to a position he lost due to AGP's unlawful disability discrimination.[10]

Thus, the balance of the equities clearly weighs in favor of plaintiff Knutson, and as such AGP's motion to stay execution of the order of reinstatement pending appeal is **denied**. However, as AGP has a right under Federal Rule of Appellate Procedure 8(a)(2) to seek a stay of execution as to the reinstatement order from the Eighth Circuit Court of Appeals, the court **temporarily stays** execution of the reinstatement until **March 11, 2004** to give AGP the opportunity to file a motion for a stay with the Court of Appeals.

### D. Plaintiff's Motion to Compel Reinstatement

 "[T]he mere pendency of an appeal does not, in itself, disturb the finality of a judgment." *Wedbush, Noble, Cooke, Inc. v. S.E.C.*, 714 F.2d 923, 924 (9th Cir.1983). As the judgment ordering reinstatement is not superceded or stayed, it "remains fully in effect, and [this court] retains authority to enforce that judgment." Ides, *supra*, 43 F.R.D. 307; *see Hovey v. McDonald*, 109 U.S. 150, 159–160, 3 S.Ct. 136, 27 L.Ed. 888 (1883) (recognizing that where a court does not exercise its power to stay injunctive relief, the injunctive relief remains in full force and effect); *Huey v. Sullivan*, 971 F.2d 1362, 1367 n. 6 (8th Cir.1992) (noting the principle that the district court retains jurisdiction to enforce its judgment that has not been stayed or superceded); *Island Creek Coal Sales Co.*, 764 F.2d at 439 (recognizing that even pending appeal a district court is not deprived of the authority to supervise and enforce its own judgment that has not been stayed or superceded); *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 n. 2 (5th Cir.1984) ("[T]he district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superceded."). The only restraint on the court's authority to enforce it's reinstatement order is that it may not enlarge or alter the scope of the judgment. *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588

---

**10.** The court does not find the *Thomas* case instructive in determining where the public interest lies. In the *Thomas* case, unlike in this case, the plaintiffs had already been reinstated to their positions at the time a stay was sought. *Thomas*, 636 F.Supp. at 590.

(6th Cir.1987); *see* Ides, *supra,* 143 F.R.D. 307 (noting that the district court cannot "take any action that would undermine, enlarge, or otherwise alter the status of the case on appeal.").

 For all of the reasons discussed in great detail in this court's July 28, 2003 order, *Knutson I,* 273 F.Supp.2d at 1004–10, reinstatement of Mr. Knutson remains the most appropriate prospective relief for the disability discrimination he suffered at the hands of AGP. As discussed above, the public interest in eradicating employment discrimination can best be vindicated by the hasty reinstatement of Mr. Knutson. Moreover, as this court's order of reinstatement on July 28, 2003, has not been superceded or stayed, it is fully enforceable by this court. In exercise of this court's authority to enforce its judgment, the plaintiff's motion to compel reinstatement is **granted.**[11] AGP is ordered, absent the grant of a stay by the Eighth Circuit Court of Appeals in the time allowed, to reinstate plaintiff Knutson to the position of boiler room operator at its Eagle Grove, Iowa plant by March 11, 2004. Failure to comply with this order of reinstatement will subject AGP, on the motion of the plaintiff, to civil contempt proceedings. *Island Creek Coal Sales Co.,* 764

F.2d at 440 (6th Cir.1985) (holding that a district court can supervise its unstayed judgment via civil contempt proceedings even where an appeal is pending); *see Klett v. Pim,* 965 F.2d 587, 590–91 (8th Cir.1992) (outlining the types of civil contempt penalties that a district court can impose). Additionally, as AGP failed to comply with this court's valid, unstayed order, the plaintiff is entitled to the compensation he would have earned from the time this court ordered his reinstatement on July 29, 2003, through the time he is actually reinstated by AGP. Under the same veil of authority which allows this court to enforce its own unstayed judgment, this court orders AGP to pay Knutson the reasonable wages he would have earned during the interim period from the date of the judgment, July 28, 2003, through the earlier of (1) the actual date Knutson is reinstated or (2) the issuance of a decision by the Eighth Circuit Court of Appeals. This order for payment of wages Knutson would have earned had he been reinstated immediately following this court's order is stayed pending a decision by the Eighth Circuit Court of Appeals by the posting of a **supersedeas bond of $30,-000.00** [12] **by AGP on or before March 1, 2004.**

11. As this court has already granted the plaintiff's motion to compel reinstatement, the issue of whether the alternative relief (i.e. front pay) requested by the plaintiff is appropriate need not be decided at this time. However, even if the issue were squarely before the court it is unlikely that the court would have jurisdiction over the matter as the court's denial of front pay is the direct, and only, issue Mr. Knutson appealed to the Eighth Circuit Court of Appeals. *Liddell,* 73 F.3d at 822(citing *Griggs,* 459 U.S. at 58, 103 S.Ct. 400) A grant of front pay by this court, where it had previously denied front pay, would impermissibly alter issues on appeal to the Eighth Circuit Court of Appeals. *See id.* ("Once appealed, issues before an appellate court should not be undermined or altered."). Further, even if this court had jurisdiction

over the matter, the court originally denied the plaintiff's request for front pay because there was insufficient information upon which an award of front pay could be based. *Knutson I,* 273 F.Supp.2d at 1011–12. No additional information has been provided by the plaintiff to rectify this deficiency. Lastly, the court also need not decide whether Iowa Code Chapter 91A, which provides for assessment of twice the wages due to be paid by an employer who unlawfully withholds wages from an employee, would be the appropriate formula for determining the amount of front pay to award Mr. Knutson.

12. The amount of $30,000.00 was agreed to by the parties during oral argument on February 12, 2004.

## III. CONCLUSION

In summary:

1. As to the monetary portion of the judgment of this court entered July 28, 2003, AGP's motion for a stay of execution is **granted provided that AGP post a supersedeas bond in the amount of $213,000.00 on or before March 1, 2004.**

2. As to the nonmonetary portion of the judgment—the court's judgment that plaintiff Knutson be reinstated to the position of boiler room operator—AGP's motion for a stay of execution is **denied.**

3. Plaintiff's motion to compel reinstatement is **granted**, though this ruling is **temporarily stayed until March 11, 2004**, to allow AGP to seek a stay of execution of the order of reinstatement from the Eighth Circuit Court of Appeals. AGP shall be subject to civil contempt if the Eighth Circuit Court of appeals denies its application for a stay and the plaintiff is not reinstated by March 11, 2004.

4. Pursuant to this court's authority to enforce its own order of reinstatement, defendant AGP is ordered to pay Knutson the reasonable wages he would have earned during the interim period from the date of this court's original order on July 28, 2003, through the earlier of (1) the actual date Knutson is reinstated or (2) the issuance of a decision by the Eighth Circuit Court of Appeals is filed. **This order is stayed pending the decision of the Eighth Circuit Court of Appeals on the posting of a supersedeas bond on or before March 1, 2004, in the amount of $30,000.00 by AGP.**

**IT IS SO ORDERED.**