**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0300n.06

**No. 12-1548**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Mar 26, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| STONEBRIDGE EQUITY, dba Stonebridge Business Partners, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CHINA AUTOMOTIVE SYSTEMS, INC., | ) ) | |
| Defendant-Appellant. | ) ) | |

BEFORE:  DAUGHTREY, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.  This is a contract dispute that arrives at this court after adjudication by two arbitrators.  China Automotive Systems, Inc. claims that both arbitrators manifestly disregarded the law by using extrinsic evidence to interpret a contract before deciding that it was ambiguous. China Automotive also argues that the arbitrators granted an award that did not draw its essence from the contract and violated the arbitration agreement.  The district court confirmed the award and added a paragraph for enforcement purposes.  China Automotive argues that this was improper additional relief not awarded in arbitration.

The arbitrators' awards indicate that they found the contract ambiguous before considering extrinsic evidence and that they did not ignore the plain language of the contract.  Moreover, the awards are not contrary to the contract or in violation of the arbitration agreement, and the district

court's addition to the remedy was collateral to and necessary for the execution of the award. Therefore, the district court properly confirmed the arbitration awards.

China Automotive is a supplier of auto parts and Stonebridge provides sales representation to new companies entering the auto industry. The two companies entered into a contract "designed to focus on [Stonebridge's] providing [China Automotive] with business development services to help [China Automotive] to identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe." R.1-2, PageID #6. The contract called for China Automotive to pay Stonebridge a $5,000-per-month retainer fee. In addition, China Automotive would pay Stonebridge success fees under specified conditions. The first of these was specified in section 2A: if China Automotive signed a purchase order that Stonebridge procured, solicited, or pursued, China Automotive would pay Stonebridge five percent of its gross margin from that sale.[1] *Id.* A second was specified in section 2B: if China Automotive, through the procurement, solicitation and/or effort of Stonebridge, obtained a price for parts greater

---

[1]The full text of section 2A is:
A. If CAS successfully signs a purchase order which is procured by SBP, solicited by SBP or is pursued by SBP during the term of this engagement, CAS agrees to pay SBP 5% of the gross margin which the sale creates for CAS. (whereas gross margin is defined as the difference between the target price for that specific product and the actual direct manufactured cost of goods sold; and, whereas target price shall be as agreed between SBP and CAS at the time at which the opportunity is identified and/or pursued by SBP) CAS has the sole discretion and right to reject any orders from any customers. Plus;

than an agreed-upon target price, it would pay Stonebridge forty percent of the extra income.[2] *Id.* The crux of the parties' dispute is whether Stonebridge could collect success fees under section 2B in a situation where it is not owed success fees under section 2A.

After the contract expired according to its terms, Stonebridge filed suit in federal district court claiming that China Automotive owed it success fees for Stonebridge's work. Because the contract included an arbitration clause, the parties went to binding arbitration and the case was dismissed. The district court retained jurisdiction to enforce, confirm, vacate, or correct any arbitration award.

The parties reached a separate arbitration agreement outlining how the arbitration would proceed. Under the agreement, the parties chose a trial arbitrator to hear witness testimony, evaluate evidence, and decide on an award. The parties also agreed that they would have the right to appeal any arbitration award to a mutually chosen appeal arbitrator. The standard of review on appeal would be "the same as if the matter were appealed to a Michigan appellate court." R. 20-6, PageID #252.

---

[2]The full text of section 2B is:
B. If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, then CAS also agrees to pay SBP 40% of the excessive amount which is defined as the difference between the actual price and the target price. For the purposes of this Section 2 A and B, success fees shall remain in effect for the life of product supply to the customer. CAS and SBP shall agree to a target price for each project at the time each business opportunity is identified. Plus;

The trial arbitrator determined that Stonebridge was entitled to $147,239.09 in past success fees, to future success fees, to a penalty under the Michigan manufacturers representative statute, and to legal fees. The success fees were for parts China Automotive sold to Chrysler for the Jeep Wrangler. The trial arbitrator determined that Stonebridge did not procure, solicit, or pursue Chrysler's order of parts for the Wrangler. Accordingly, Stonebridge was not entitled to success fees under section 2A of the contract. However, the arbitrator determined that Stonebridge was sufficiently involved in developing China Automotive's pricing strategy for the Wrangler parts to constitute "effort" under the contract. The trial arbitrator determined that under section 2B of the contract, Stonebridge was therefore entitled to a success fee equal to 40% of the difference between the price Chrysler paid and the "target price."

China Automotive argued that Stonebridge was not entitled to success fees for the Wrangler parts because the contract limited Stonebridge's work to identifying and pursuing new customers and the trial arbitrator had determined that Chrysler was an existing customer. However, the trial arbitrator determined that the contract was ambiguous. He cited two reasons for the ambiguity. First, he noted that while "the introductory paragraph of the contract limits the activities of [Stonebridge] to pursuing new customers. . . . [t]hat provision . . . is not carried forward." R. 17-4, PageID #79. Moreover, the trial arbitrator found that the difference in language between the first two success fee sections, 2A and 2B, created an ambiguity because while 2A "is limited to purchase orders procured, solicited or pursued by" Stonebridge, section 2B "indicates [Stonebridge] would be entitled to a success fee for procurement, solicitation 'and/or effort.'" *Id.* The trial arbitrator

found this language to be "dramatically different" in that section 2A "clearly identifies that the purchase order is to be procured, solicited or pursued by [Stonebridge], while the language of [section 2B] indicates success compensation can be awarded for improving the final price of a contract that was procured, solicited or resulted from any effort of [Stonebridge]." *Id.* at PageID #80.

The trial arbitrator next looked at prior drafts of the contract. The parties dispute whether he did so before or after determining that the contract was ambiguous. He noted that earlier drafts limited success fees to new customer sales and had all the success fees in one paragraph. However, the final contract did not include the limiting language and broke the success fee section into several paragraphs. The trial arbitrator concluded from this evidence that while success fees under section 2A are limited to new customers, success fees under section 2B are available whenever Stonebridge's efforts impact the final price of a sale.

China Automotive appealed and the parties selected an appeal arbitrator. The appeal arbitrator first determined that under the parties' arbitration agreement, she was required to apply de novo review to legal questions, including whether the contract is ambiguous, and whether extrinsic evidence should be used to interpret the contract. However, the appeal arbitrator would apply clear error review to factual questions, such as the meaning of an ambiguous contract.

Reviewing the trial arbitrator's ruling, the appeal arbitrator determined that the "conclusion that the Agreement is ambiguous is based upon the language of the contract itself, not based upon the consideration of extrinsic evidence." R. 17-6. PageID #107. Furthermore, she noted that Michigan law allows the use of extrinsic evidence to prove the existence of ambiguity in a contract

so long as it is not used to contradict the written contract. Reviewing the previous drafts of the contract as well as other extrinsic evidence, the appeal arbitrator reached the same conclusion as the trial arbitrator—that Stonebridge was entitled to success fees for the Wrangler parts. However, the appeal arbitrator modified the award in one way. While the trial arbitrator determined that future success fees would be calculated based on the price China Automotive and Chrysler had agreed to, the appeal arbitrator determined that the parties' contract required the fees to be calculated based on the price Chrysler actually pays. Thus, under the appeal arbitrator's construction, the amount China Automotive must pay Stonebridge in future success fees depends upon price fluctuations.

Returning to the district court, Stonebridge moved for a judgment confirming the arbitration award, while China Automotive moved to vacate the award. China Automotive argued that both arbitrators exceeded their powers by improperly considering extrinsic evidence and by not applying the introductory paragraph of the contract to the entire contract. Furthermore, China Automotive argued that the arbitrators failed to apply the plain text of section 2B of the contract. Finally, China Automotive argued that the appeal arbitrator did not actually conduct de novo review of the trial arbitrator's decision.

The district court confirmed the arbitration award. The court found it "clear that [the arbitrators] engaged in an interpretation of the agreement, as opposed to the implementation of their own brand of industrial justice." *Stonebridge Equity LLC v. China Auto. Sys., Inc.*, 09-11541, 2012 WL 899360 at \*3 (E.D. Mich. Mar. 16, 2012). Finding that the arbitrators did not exceed their authority, the district court denied China Automotive's motion to vacate and granted Stonebridge's

motion to confirm. At Stonebridge's request, the district court also added an additional paragraph to the award. That paragraph required China Automotive to provide Stonebridge with monthly documentation on the selling price, quantity shipped, and total sales of the Wrangler parts. R.28, PageID #511. The district court found that this paragraph was necessary because China Automotive claimed that the price of the parts had decreased since the arbitration award, thus requiring new fee calculations.

China Automotive now appeals. It argues that the arbitration award was made in manifest disregard of the law and did not draw its essence from the contract. Additionally, it argues that the appeal arbitrator did not review the trial arbitrator's legal conclusion de novo, as required by the arbitration agreement, and that the district court erred in adding the documentation paragraph to the award.

Stonebridge counters in part by arguing that after the Supreme Court's decision in *Hall Street Associates, L.L.C.. v. Mattel, Inc.*, 552 U.S. 576 (2008) , manifest disregard can no longer be a basis for vacating arbitration awards. Since there was no manifest disregard of the law here, we do not reach that issue.

The trial arbitrator began his analysis by stating that he found "as a matter of law, that the contract is ambiguous." R.17-4, PageID #79. He cited two reasons for the contract's ambiguity. First, he noted that the provision in the introductory paragraph limiting Stonebridge's activity to pursuing new customers and strategic partners is not carried forward to the success fee section. Second, he noted that sections 2A and 2B use different language. Although he used prior drafts of

the contract in the same section, he discussed them only after determining that this ambiguity existed. Rather than using the extrinsic evidence to find an ambiguity in the contract, as China Automotive argues he did, the trial arbitrator determined that there was an ambiguity, then used extrinsic evidence to resolve it. "Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003). The trial arbitrator therefore did not act in manifest disregard of Michigan law when he considered previous drafts of the contract.

China Automotive argues that the trial arbitrator found ambiguities where none existed. First, it argues that the trial arbitrator could not have found that a limitation to new customers was not carried forward from the introductory paragraph because Michigan law requires that the entire contract be read as a "harmonious whole." China Br. at 26. However, as the appeal arbitrator noted, the limiting language China Automotive relies on actually states that the agreement is "designed to *focus on* [Stonebridge's] providing [China Automotive] with business development services to help [China Automotive] to identify and pursue new customers and strategic partners." R.1-2, PageID #6 (emphasis added). Because the word focus does not necessarily require exclusivity, the arbitrators did not act in manifest disregard of the law in finding that the contract did not clearly state whether the success fees apply only to new customers. As the appeal arbitrator stated, "while the 'focus' of the Agreement may be on the pursuit of new customers, this is not the exclusive objective of the contract." R.17-6, PageID #110.

China Automotive also argues that the arbitrators should not have found an ambiguity in the change of language from section 2A to section 2B, claiming that the sections are facially parallel and easily reconciled. Section 2A states that the purchase order must be "procured by, . . . solicited by, . . . or pursued by" Stonebridge. Meanwhile, section 2B states that the price increase must be through the "procurement, solicitation and/or effort of" Stonebridge. R.1-2, PageID #7. China Automotive's argument appears to be a disagreement as to the interpretation of the contract. China Automotive does not explain why the arbitrators' interpretation is in manifest disregard of the law. This court's review of the arbitrators' decisions is very narrow, "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers, Dist. 27, Sub-Dist. 5*, 913 F.2d 1166, 1169 (6th Cir. 1990). It does not extend to reviewing arguments over contract interpretation that the arbitrators have decided. So long as the arbitrators' conclusions do not "fly in the face of clearly established legal precedent," they stand. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

China Automotive focuses on the introductory paragraph and sections 2A and 2B of the contract to argue that the arbitrators disregarded the contract in their rulings. However, China Automotive's arguments again show that the arbitrators merely interpreted the agreement differently than China Automotive does. China Automotive must demonstrate more than a disagreement over contract interpretation. It must demonstrate that the arbitrators "enter[ed] the forbidden world of 'effectively dispensing [their] own brand of industrial justice.'" *See Mich. Family Recs., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007) (quoting *Major League Baseball*

*Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). So long as "the arbitrator was 'even arguably construing or applying the contract,'" the award cannot be overturned. *Id.* (quoting Garvey, 532 U.S. at 509). The arbitrators construed the contract in this case. China Automotive argues that the arbitrators ignored the introductory paragraph. However, both arbitrators considered the 'focus' language in the introductory paragraph. They determined that that language did not limit the success fees Stonebridge could earn. Therefore, this case is unlike cases where the arbitrator entirely ignored a section of a contract, such as *International Union of Electronic, Electrical, Technical, Salaried, Machine & Furniture Workers v. Hurd Corp.*, 7 F. App'x 329, 335 (6th Cir. 2001). Here, the arbitrators found ambiguity in the contract's use of the word focus and in its use of different language in the different success-fee sections. They then used previous drafts of the contract as well as the parties' actions to resolve those ambiguities in favor of Stonebridge. The arbitrators' interpretation gives every part of the contract full effect.

Likewise, the arbitrators did not ignore the plain language of the contract in determining that sections 2A and 2B may apply to different customers. China Automotive's argument is that the words 'plus' and 'also' in those sections require the conclusion that success payments under section 2B are only required where Stonebridge is receiving payments under subsection 2A. That is not the only possible interpretation of that language. The trial arbitrator concluded that the 'plus' signifies that Stonebridge can obtain success fees under either or both those sections. The appeal arbitrator found that the word 'also' signified the same. Both arbitrators reached these conclusions after examining section 2C, which uses the same words but involves fees that could be earned from

transactions not covered by sections 2A and 2B. Since, "[i]t is clear that these transactions are in no way dependent on the earning of a success fee under" 2A, the arbitrators determined that each fee section can stand alone. This is a possible alternative interpretation of the contract and not so far afield as to ignore the contract's plain language.

China Automotive next argues that the appeal arbitrator violated the arbitration agreement by not reviewing the trial arbitrator's award de novo. The appeal arbitrator determined that, under the arbitration agreement, she was required to review the trial arbitrator's legal decisions de novo. These included the trial arbitrator's decisions that the contract was ambiguous and that extrinsic evidence should be used to interpret it. However, rather than reviewing the contract herself to determine whether it is ambiguous, she appears to have reviewed the trial arbitrator's decision and determined that he did not err because he did not consider extrinsic evidence until after he found the contract to be ambiguous. China Automotive contends that this was not de novo review of the issue.

Although the appeal arbitrator clearly knew that she was required to review the question of ambiguity de novo, she did not state that she did so. However, "[a]rbitrators are not required to explain their decisions." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). The appeal arbitrator determined that she was to apply de novo review and then upheld the trial arbitrator's decision. There is nothing in the record to suggest that she acted contrary to the arbitration agreement in doing so.

Finally, China Automotive argues that the district court should not have included a paragraph in the award ordering China Automotive to provide documentation on the selling price, quantity

shipped, and total sales of the Wrangler parts. This paragraph was not in the arbitrators' awards. The district court included this paragraph, at Stonebridge's request, "so that the parties are able to determine a more accurate amount" for the award. *Stonebridge*, 2012 WL 899360 at *4.

The arbitrators' awards were imperfect in matter of form not affecting the merits of the controversy in that they provided no method for Stonebridge to determine whether China Automotive is in compliance with the awards. In such situations, the Federal Arbitration Act gives district courts the ability to "modify and correct the award, so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11. The trial arbitrator initially determined that China Automotive owes Stonebridge success fees based on the original price Chrysler agreed to pay for the parts. However, the appeal arbitrator modified the award to require the success fees to be based on the price Chrysler actually pays for the parts. Soon after, China Automotive notified Stonebridge that Chrysler was decreasing the part price by two percent. In light of this impending decrease, Stonebridge requested the documentation so that it would have the ability to monitor whether it was receiving the fees the arbitrators had determined it was owed. Because the arbitrators' awards left Stonebridge relying entirely on China Automotive to calculate the success fees accurately, the awards were imperfect. Accordingly, the district court was acting within the parameters provided by the Federal Arbitration Act in modifying the award to allow Stonebridge to know whether China Automotive was in compliance.

The district court has the power to enforce the arbitrators' award and can take some actions consistent with and not affecting the award to do so. Thus, in *Island Creek Coal Sales Co. v. City*

*of Gainesville, Florida*, this circuit affirmed a district court order forcing the City of Gainesville to pay Island Creek for past coal deliveries and to pay for coal shipments on a scheduled basis. 764 F.2d 437, 440 (6th Cir. 1985). Gainesville had argued that the arbitrators' order in that case only required it to accept future shipments from Island Creek, thus making the district court's action an improper modification. This court disagreed, finding that the district court's order "is an effort merely to require that Gainesville perform as the arbitrators had ordered it" and that the "district court's order in dispute only serves to confirm and enforce the *arbitrators'* award in the face of obdurate opposition by Gainesville." *Id.* at 440–41 (emphasis in original). Accordingly, the district court had authority under 9 U.S.C. § 11 to act to enforce the clear meaning and intent of the arbitrators' order. Although the district court's order in this case appears to go further than the one in *Island Creek*, it was based on a similar principle of ensuring the enforcement of an award determined by arbitrators.

The arbitrators did not act in manifest disregard of the law and interpreted the contract. The district court's addition to the arbitrators' award was a minor modification in accordance with the Federal Arbitration Act. Therefore, the district court's judgment is **AFFIRMED**.